449 So.2d 209 (1984)
John Earl BOOKER
v.
STATE of Mississippi.
No. 54696.
Supreme Court of Mississippi.
March 21, 1984.
Rehearing Denied April 18, 1984.
*212 Ellis Turnage, Morris & Turnage, Cleve McDowell, Cleveland, for appellant.
Bill Allain, Atty. Gen. by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
WALKER, Presiding Justice, for the Court:

I.
This is an appeal from the Circuit Court of Tate County, wherein the appellant pled guilty to the charge of capital murder. After a trial to determine sentence, the jury rendered its unanimous verdict that the appellant should suffer the death penalty. Based upon this verdict, the trial judge sentenced Booker to death by lethal gas as provided in Mississippi Code Annotated section 99-19-51 (1972). It is from this verdict and sentence that Booker appeals and assigns the following as error:
(1) The trial court erred in failing to suppress the statement of the appellant;
(2) The trial court erred in failing to grant appellant's motion to quash the special venire panel;
(3) The trial court erred in overruling defendant's objections to the prosecution's introduction of gruesome photographs;
(4) The trial court erred in overruling appellant's objections to the testimony of the victim's widow;
(5) The trial court erred in not granting the appellant's motion for judgment N.O.V. in that the verdict was contrary to the overwhelming weight of evidence; and
(6) The court is urged to consider the closing argument herein pursuant to its ruling in the Howell case.
(7) The jury's sentence of death was against the overwhelming weight of the evidence and the result of an unconstitutional weighing process.
(8) The arbitrary and discriminatory imposition of the death penalty in this case violates the Eighth and Fourteenth Amendments.
(9) The prosecutor improperly used all of his peremptory challenges to exclude all Blacks from the jury, in violation of appellant's constitutional rights.

II.
On the afternoon of March 11, 1981, Mr. O.M. Martin was found shot to death at his Charleston scrap iron business. Charleston Police Chief Jimmy Shows was dispatched to the scene. After arriving, the requested investigative assistance from the Tallahatchie County sheriff's department and the Mississippi Highway Patrol.
Investigators A.D. Gatewood, Jay Clark, and Jimmy Dees responded to Chief Shows' request for assistance. They proceeded to Mr. Martin's scrap iron business, where they conducted an investigation and took photographs of the crime scene. Thereafter, one of the investigators proceeded to the hospital and took pictures of Mr. Martin's body.
*213 Through their investigation the officers learned that on the morning of March 11, 1981, John Earl Booker, the appellant, had helped load a truck at the scrap yard. On March 12, 1981, several of the officers went to Booker's home to question him. While there, investigator Clark obtained written consent to search the pickup Booker was driving. The consent form was signed by Booker and Cora Jones, Booker's girlfriend and owner of the pickup. A search of the pickup produced Booker's wallet, which contained $123.00 and a small bag of marijuana.
Booker was then taken to the police station, where he was advised of his rights and then questioned by Chief Shows, Deputy Sheriff Doyel Morrow and Investigator Jimmy Dees. Throughout the questioning Booker denied any involvement in the crime but agreed to submit to a polygraph examination.
Accompanied by Investigator Dees, Deputy Sheriff Morrow and Chief Shows, Booker traveled to Jackson on March 12 for a polygraph, which was given at the Mississippi Highway Patrol Administration Building. After the test, Booker was taken to a waiting room while the results were being analyzed. At this point he indicated to Deputy Sheriff Morrow that he would like to make a statement. Morrow then called for Dees, who came into the room and advised Booker of his constitutional rights. Booker indicated that he understood these rights and agreed to waive them.
In his statement Booker confessed to killing Mr. Martin. In summary, he told the following story:
Booker and two accomplices agreed to rob Martin's scrap iron business. When they arrived Mr. Martin was welding at the back of an old pickup truck. Booker pulled a nickel-plated .38 calibre pistol and shot Mr. Martin in the head. He then took Mr. Martin's wallet, which contained a little over $400.00. Booker gave his two accomplices $100.00 each and kept the remaining $200.00 for himself. Booker told the officers that Martin was shot so that there would be no witnesses to the robbery.
After making the statement, Booker was placed under arrest and transported back to Charleston.
Booker's two accomplices, Kermit Jones and Timothy Gardner, were also arrested. Shortly after their arrest, Lottie Jones, Kermit's sister, surrendered a brown paper bag to the police. The bag contained a .38 calibre pistol and a wallet belonging to Mr. O.M. Martin. Mrs. Jones informed the officers that the bag had been hidden outside of their house.
On the defendant's motion, venue was changed from Tallahatchie to Tate County due to the publicity surrounding the case. Trial commenced on July 20, 1981 and the appellant changed his plea from not guilty to guilty. Consequently, the trial consisted of the sentencing phase only.
On July 22, 1981 the jury returned its verdict, finding that the aggravating circumstances outweighed the mitigating circumstances and the defendant should receive the death penalty. In accordance with this verdict the trial judge sentenced Booker to be executed on September 11, 1981. This order was then stayed pending the outcome of this appeal.

III.

A.
In his first assignment of error the appellant urges that the trial court erred in failing to suppress the confession he gave to Deputy Sheriff Morrow and Investigator Jimmy Dees. The appellant contends that the officers threatened to beat him if he didn't talk and, therefore, the confession is not voluntary.
The procedure for admitting a confession in the face of a challenge that it is involuntary was set forth in Agee v. State, 185 So.2d 671 (Miss. 1966):
The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession *214 was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959). When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury. Lee v. State, supra, is also authority for the proposition that when, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness. See also Holmes v. State, 211 Miss. 436, 51 So.2d 755 (1951).
185 So.2d 673.
A hearing was conducted outside the jury's presence and the appellant testified that he gave a confession only because the officers threatened to take him into a room and make him talk. The State then called Investigator Dees and Deputy Sheriff Morrow, the two officers who were present when the confession was given. Both testified that the appellant was in no way threatened or coerced and that he gave the confession after twice being advised of his Miranda rights. At the conclusion of the hearing the trial judge held that Booker's statement was free and voluntarily given. Based upon this finding, he ruled that it would be admitted into evidence.
The procedure followed by the trial court comports completely with the requirements set forth in Agee, supra. Although the trial judge made no specific finding that the appellant was not beaten, such is to be inferred from his holding that the confession was voluntarily given. This Court has held many times that whether a confession was voluntarily given is a question of fact for the trial court's determination. Where there is substantial and believable evidence supporting his decision, it will not be overturned. See Harrigill v. State, 381 So.2d 619 (Miss. 1980); Curry v. State, 328 So.2d 328 (Miss. 1976); Clemons v. State, 316 So.2d 252 (Miss. 1975). We are unable to say that the trial court's ruling was contrary to the evidence. Accordingly, his finding will not be disturbed.

B.
The appellant next contends that the trial court erred in failing to grant his motion to quash the special venire panel.
On May 18, 1981 the appellant filed a motion for a special venire. The trial judge sustained the motion and ordered the Clerk of Tate County to draw 150 names from the jury wheel. He also directed the Clerk to give defense counsel notice of the time and date of the drawing so that he could be present to observe the drawing if he desired. After the names were drawn, only 67 were statutorily qualified to serve on the special venire.
Three allegations are made under this assignment of error. First, the appellant contends that the remaining number, 67, was not broad enough to legally constitute a special venire. We note that the appellant cites no authority for this contention, which is clearly without merit. Mississippi Code Annotated section 13-5-77 (1972) provides:
When any person charged with a capital crime, or with the crime of manslaughter, shall have been arraigned and the plea of not guilty entered, it shall be the duty of the court, upon the demand of the accused or the district attorney, to cause to be drawn, in open court, from the jury-box as many names as the judge in his discretion may direct, not to be less than forty, and it shall be the duty of the clerk to issue a special venire facias, commanding the sheriff to summon the persons whose names are so drawn, to attend the court on a particular day to be named in the writ. In case the special *215 venire be exhausted without a jury being impaneled from those summoned and in attendance, the court shall proceed to make up the jury for the trial of the case from the regular panel and tales jurors who may have been summoned for the day. If, after exhausting said regular panel and tales jurors, a competent jury be not obtained, the court shall direct the sheriff to summon forthwith as many tales jurors as shall be sufficient to complete the jury.
In the event that there should be no such box, or the same should be mislaid, or the names therein have been exhausted, then the court may order a special venire facias to be issued by the clerk, directing the sheriff to summon as many jurors as may be necessary, not less than forty, and, after exhausting the same, to impanel the jury as hereinbefore directed. The slips containing the names of all jurors drawn or summoned on a special venire, and not impaneled on the jury, shall be returned to the box from which they were drawn immediately after the jury shall be impaneled. If the special venire be not demanded, the jury shall be composed of the regular venire for the week and as many talesmen and bystanders as may be required, to be summoned under the order of the court.
In directing the Clerk to draw 150 names, the trial judge complied with the statutory requirement of ordering that not less than 40 names be drawn for the special venire. That the defendant was not prejudiced is further evidenced by the fact that the jury was seated without the special venire being exhausted.
The appellant secondly alleges that he was entitled to a jury containing members of his own race. However, this question is not properly preserved for appellate review as the record does not disclose the race of the jurors. But even if this question was properly before the Court, it would still fail. "Proportional representation of the races on a jury is not required. What is required is that county officials must see to it that jurys are in fact and in good faith selected without regard to race." (Dorsey v. State, 243 So.2d 550, 552 (Miss. 1971)). In this case there is no allegation that the jury list did not reasonably reflect a cross-section of the community. This is all that the law requires; it does not guarantee the appellant a jury with members of his own race.
Finally, the appellant alleges under this assignment that the trial court erred in excluding for cause 16 members of the panel who were opposed to the death penalty. This same argument was presented in Irving v. State, 361 So.2d 1360 (Miss. 1978), wherein the Court stated:
In Witherspoon [v. Illinois], the United States Supreme Court held:
"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. [510] at 521-522, 88 S.Ct. [1770] at 1776-1777, 20 L.Ed.2d [776] at 784-785.
Following Witherspoon, this Court considered the procedure to be employed by trial judges in Myers v. State, 254 So.2d 891 (Miss. 1971). That procedure follows:
"`The proper method of bringing the death penalty to the attention of the special veniremen is for the trial judge to inform them that they have been summoned as veniremen in a capital case and that a verdict of guilty could result in the infliction of the death penalty. The judge should then ask them if any member of the panel has any conscientious scruples against the infliction of the death penalty, when the law authorizes it, in proper cases, and where the testimony warrants it. If there are those who say that they are opposed to the death penalty, the trial judge should then go further and ask those veniremen, who have answered in the affirmative, whether or *216 not they could, nevertheless, follow the testimony and the instructions of the court and return a verdict of guilty although that verdict could result in the death penalty, if they, being the judges of the weight and worth of the evidence, were convinced of the guilt of the defendant and the circumstances warranted such a verdict. Those who say that they could follow the evidence and the instructions of the court should be retained, and those who cannot follow the instructions of the court should be released. The mere fact that a venireman is opposed to the death penalty does not disqualify him as a juryman, if he can do his duty as a citizen and juror and follow the instructions of the court, and where he is convinced of the defendant's guilt he can convict him although the verdict of the jury may result in the death penalty's being inflicted upon the defendant' (Emphasis added). Armstrong v. State, Miss., 214 So.2d 589, at 593." 254 So.2d at 893-894.
361 So.2d 1368-69.
This procedure was followed by the court below. All 16 who were excluded indicated that they would not follow the law if it meant imposing the death penalty. In Stevenson v. State, 325 So.2d 113 (Miss. 1975) this Court held that exclusion of veniremen "who would not follow the evidence and instructions of the court, and return a verdict of guilty even though they were convinced beyond a reasonable doubt of the guilt of the defendant" does not violate a defendant's Sixth Amendment Right to a representative jury, noting: "Such persons are not competent jurors in a capital case and the court should exclude such persons." 325 So.2d 119. Therefore, no error was committed in excluding the 16 veniremen.

C.
The appellant next contends that the trial court erred in overruling his objections to the prosecution's introduction of gruesome photographs.
Two sets of photographs were questioned under this assignment. The first set consists of five photographs depicting the crime scene. Each shot shows a dark spot on the ground, presumably blood. A review of these pictures reveals that they are not gruesome or likely to arouse the emotions of the jurors. Consequently, the trial court properly overruled the appellant's objections.
The second set consists of two photographs which graphically show the condition of the victim after he was shot. Similar photographs were introduced in Coleman v. State, 378 So.2d 640 (Miss. 1979), wherein the Court stated:
The two pictures complained of were color photographs showing where the shotgun pellets hit the victim on the right side of his head, his lower right arm, and on the left side of his chest.
The trial court's ruling was that the state was entitled to introduce these two pictures to support its burden of proving that the offense was "especially heinous, atrocious or cruel". The trial court also granted a jury instruction, over defense objections, that the jury could consider the aggravating circumstance that the offense was especially heinous, atrocious or cruel.
The admission of the two pictures on this basis was not error, as they had some probative value along this line of reasoning.
378 So.2d 648-49.
As in Coleman, the photographs in the instant case have probative value on the question of whether the killing was done in a heinous, atrocious, or cruel manner. These pictures also show how the appellant shot the victim in the head as he turned toward him. It is reasonable to infer that he did this to keep from being identified. The appellant could just have easily knocked Mr. Martin in the head and spared his life, but chose instead to kill him.
In Voyles v. State, 362 So.2d 1236 (Miss. 1978), it was noted that:

*217 This Court has held that in considering the competency, relevancy and materiality of photographs, it is within the sound discretion of the trial judge to determine whether or not the photographs have a legitimate evidentiary purpose. Irving v. State, 228 So.2d 266 (Miss. 1969); Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953); Coleman v. State, 218 Miss. 246, 67 So.2d 304 (1953).
362 So.2d 1241.
The photographs in this case were clearly relevant and the trial court did not abuse its discretion in allowing them into evidence.

D.
The appellant next contends that the trial court erred in overruling his objections to the testimony of the victim's widow.
Prior to Mrs. Martin taking the stand, the defense counsel made a motion in chambers to exclude her testimony on the ground that it would improperly place the victim's character into evidence. After argument from both parties, the trial judge ruled that there was no basis to exclude the proposed testimony. Nonetheless, he informed defense counsel that he would entertain objections from the floor to any portions of the testimony defense counsel felt improper.
Thereafter, Mrs. Martin took the stand and was questioned by the prosecutor. At no point during her testimony did the defense counsel object. Consequently, the appellant is procedurally barred from raising this issue on appeal. Tubbs v. State, 402 So.2d 830 (Miss. 1981); Gregg v. State, 374 So.2d 1301 (Miss. 1979); McComb v. Turner, 22 Miss. 119 (1850).
Notwithstanding the fact that the issue is barred, we have carefully reviewed the testimony of Mrs. Martin and can find no reference to the character of the victim. Her testimony consists almost entirely of outlining the events on the day of the crime, describing the victim's business practices, and identifying the victim's wallet.
A similar issue was presented in Evans v. State, 422 So.2d 737 (Miss. 1982), where the victim's brother testified on behalf of the State. He was emotional and sobbed throughout the entire testimony. In response to a charge that the testimony was offered solely to inflame the jury, this Court held:
We are unable to say that his testimony was not relevant and did not have probative value. It was for the purpose of identifying the victim and, as we have said in other cases, the appellant caused the situation and cannot complain, if the evidence has probative value.
422 So.2d 743.
In contrast to the challenged testimony in Evans, Mrs. Martin remained calm and collected. She never sobbed or became emotional. It can hardly be said that her testimony was calculated to inflame the jury or that it resulted in prejudice to the appellant.

E.
The appellant next contends that the trial court erred in not granting his motion for a judgment N.O.V., in that the verdict was contrary to the law and evidence and was contrary to the overwhelming weight of the evidence. It is the appellant's contention that the trial court erred in granting, without objection, the following instruction which limited the jury's consideration to three mitigating circumstances:
INSTRUCTION S-3
The Defendant plead guilty to the crime of Capital Murder. You must now decide whether the Defendant will be sentenced to death or to life imprisonment. In reaching your decision you must objectively consider the detailed circumstances of the offense for which the Defendant was convicted, and the Defendant himself.
To return the death penalty, you must find the aggravating circumstances, *218 those which tend to warrant the death penalty, outweigh the mitigating circumstances, those which tend to warrant the less severe penalty.
Consider the following elements of aggravation in determining whether the death penalty should be imposed.
1. The capital offense was committed while the Defendant was engaged in the commission of Robbery.
2. The capital offense was committed for pecuniary gain.
3. The capital offense was especially heinous, atrocious or cruel.
You must unanimously find beyond a reasonable doubt that one or more of the preceding aggravating circumstances exists in this case to return the death penalty. If none of those elements is found to exist, the death penalty may not be imposed and you shall write the following verdict on a sheet of paper:
"We, the Jury, find that the Defendant should be sentenced to life imprisonment."
If one or more of those elements of aggravation is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstances. Consider the following elements of mitigation in determining whether the death penalty should not be imposed:
1. At the time of the homicide, the Defendant was under the influence of drugs.
2. The Defendant has no significant history of prior criminal activity.
3. The age of the Defendant at the time of the crime.
If you find from the evidence that one or more of the preceding elements of mitigating exists, then you must consider whether they outweigh the aggravating circumstances you previously found, and you must return one of the following verdicts. The verdict you return must be written on a separate sheet of paper.
The appellant argues that the above instruction was error for four reasons:
(1) It limited the jury's consideration to the three mitigating circumstances listed,
(2) It failed to define the role of mitigating circumstances in the sentencing process,
(3) It failed to inform the jury that they had the option to impose a life sentence notwithstanding a finding that the aggravating circumstances outweighed the mitigating circumstances,
(4) It failed to inform the jury that they must find the death sentence appropriate beyond a reasonable doubt.
However, the appellant made no objection to the above instruction at trial, nor did he submit an instruction encompassing those matters which he now contends would have been proper for the jury to consider. For this reason, he is procedurally barred from assigning the above instruction as error.[1] Mississippi Supreme Court Rule 42; Warren v. State, 369 So.2d 483 (Miss. 1979); cert. denied, 444 U.S. 956, 100 S.Ct. 436, 62 L.Ed.2d 328; Nelson v. State, 61 Miss. 212 (1883).
We note that an almost identical instruction was found to be error in Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981). In that case Washington's counsel introduced evidence of nonstatutory mitigating factors and mentioned these to the jury in closing argument. On appeal he argued that the instruction was error, citing the Supreme Court's holding in Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) that: "The sentencer ... (must) not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record or any of the circumstances of the offense that the defendant proffers as a basis for sentence less than death." The Fifth Circuit agreed, holding that the instruction improperly limited the jury's consideration *219 to those statutory mitigating factors which were mentioned in the instruction.
The present case differs from both Washington and Lockett in that Booker proffered no evidence of nonstatutory mitigating factors. His sole defense at trial was that he was addicted to drugs when the crime was committed. This is a statutory mitigating factor and was included in the above instruction to the jury. Therefore, even if the issue had been preserved for appeal, no error was committed by the trial court.

F.
The appellant next contends that reversal is necessary because the prosecutor improperly mentioned appellate review in his closing argument.
As with the previous two assignment of error, the appellant failed to make a contemporaneous objection at trial. He is now procedurally barred from raising this issue on appeal. Coleman v. State, 378 So.2d 640 (Miss. 1979); Cartwright v. State, 71 Miss. 82, 14 So. 526 (1893). Moreover, the appellant twice invited the error. The first time occurred on voir dire, when defense counsel told the jury:
COUNSEL FOR DEFENDANT (Mr. McDowell): There is no such person. Okay. Is there anybody who does not understand that if the death penalty is recommended here that death is final, and there is no chance for a reversal or anything once that's been implemented? Do you understand the question? Do each of you understand that death is the ultimate penalty and that once it is carried out, there is no way to undo that decision?
This prompted the prosecutor to object, citing automatic appellate review as his grounds:
ASSISTANT DISTRICT ATTORNEY (Mr. Williams): Now, if the Court please, I object to that. There's an automatic appeal. I think that's highly misleading to this Jury panel.
The defense counsel then invited the error during closing argument when he said:
We are asking you not to put the State of Mississippi, the families of both these parties, through all of these remaining suffering that are sure to come from indefinite appeals. Now, we know the stories of death penalties. It is one appeal after another. It uses State money again and again and again. You know it goes on and on and on. You know when the last time someone was executed in Mississippi.
In response to these remarks, the prosecutor stated in his rebuttal closing:
Your decision is not a hard decision as Mr. McDowell would have you believe. You're not sentencing this man to die and his going to be taken out of here for public execution. Mr. McDowell knows that. Yours is not the final say. He mentioned the prolific appeals that follow. That's true. He mentioned the last execution in this State  1968. So, your job is not to kill a person. Your job is to prescribe punishment, whether it is ever administered or not.
Under these circumstances, the statements made by the prosecutor were prompted and invited by the statements of the appellant's attorney. This Court has held on numerous occasions that it will not reverse when an error is invited. See, e.g., Caldwell v. State, 443 So.2d 806 (Miss. 1983). Consequently, the prosecutor's statements in this case, if error and if preserved, do not warrant reversal.

G.
The appellant next contends that the trial court erred in limiting testimony about his mental condition. The basis for this assignment of error is the following exchange, which occurred while the defense counsel was questioning the appellant's Sunday School teacher:
Q. And, that this change in him started taking place a couple of years back.
A. About two years back.

*220 Q. Now let me ask you  during the last two years, did you notice his becoming involved in conflicts with the law?
A. With the law?
Q. With the police.
A. I heard something about him having a little conflict with the law once before.
Q. Would you know based on your observation of him at this earlier stage you testified, would you have an opinion as to whether or not he would in that mental condition have committed any acts similar to what he is being tried for?
[ASSISTANT DISTRICT ATTORNEY]
(Mr. Williams): Objection, Your Honor. That's pure speculation and conjecture.
The Court: I sustain the objection.
The appellant cites Harvey v. State, 207 So.2d 108 (Miss. 1968) and Keeler v. State, 226 Miss. 199, 84 So.2d 153 (1956) for the proposition that a lay witness may give testimony about a defendant's mental condition. It is true that we said in those two cases that a witness may give an opinion as to the sanity of a defendant. However, that was not the question asked of this witness. She was asked whether or not, in her opinion, the appellant would have committed acts similar to the one for which he was being tried if he had not been under the influence of drugs. The appellant cites no authority from any jurisdiction holding that such a question is proper. The jury had before it the defendant's evidence that he was under the influence of drugs at the time he committed the crime. Furthermore, they were instructed that they could take this evidence into consideration in determining if the defendant should receive the death penalty. Any opinion of a lay witness as to what the appellant would or would not have done under certain conditions was so speculative as to have no probative value. Therefore, the trial court properly sustained the prosecutor's objection to this question.

H.
The appellant next contends that the jury's sentence of death was against the overwhelming weight of the evidence and the result of an unconstitutional weighing process. Initially, we note that the arguments under this assignment of error relate to the aggravating circumstances set forth by Instruction S-3.[2] Since this instruction was granted without objection of defense counsel, however, any claim that it is erroneous is procedurally barred.[3] Notwithstanding this fact, we will briefly address the merits of the appellant's claim.
Instruction S-3 permitted the jury to find an aggravating circumstance if they believed the capital offense was "especially heinous, atrocious or cruel." The appellant argues that this aggravating circumstance, without further definition, was unconstitutionally vague and overbroad. This argument was considered by the Court in Washington v. State, 361 So.2d 61 (Miss. 1978), wherein it is stated:
We must remember that the twelve members of the trial jury were a jury of the defendant's peers, and came from the county of the defendant's residence. The jury was composed of average citizens possessing average intelligence, a cross-section, if you please, of the citizenry of the community. In our opinion the words "especially heinous, atrocious or cruel" are not confusing nor likely to be misunderstood by the average citizen. The average citizen has a reasonable knowledge of the generally accepted meaning of these words. He comes in contact with these words frequently, if not in personal conversation at least through the news media of television, radio or the press.
... .
It is our considered opinion that the average jury in its sound discretion and judgment understands the generally accepted meaning of the words "especially heinous, atrocious or cruel" and is able to *221 apply these words to different factual situations without further definition of these words.
It is our opinion that these words are not unconstitutionally vague.
361 So.2d 65-66. That submission of this aggravating circumstance is not unconstitutional was reaffirmed in the cases of Coleman v. State, 378 So.2d 640 (Miss. 1979), Tokman v. State, 435 So.2d 664 (Miss. 1983), and Edwards v. State, 441 So.2d 84 (Miss. 1983). In Edwards, like the case sub judice, the jury returned a verdict listing more than one aggravating circumstance. The Court held that even if the "heinous, atrocious and cruel" circumstance was unconstitutionally vague, reversal was not warranted since the other aggravating factors were sufficient to support imposition of the death sentence.
Instruction S-3 submitted two other aggravating circumstances to the jury:
(1) that the capital offense was committed while the Defendant was engaged in the commission of a Robbery; and
(2) the capital offense was committed for pecuniary gain.
The appellant argues that these two constituted an impermissible "doubling-up" of aggravating circumstances and that "commission of robbery" and "commission for pecuniary gain" are one and the same thing. This identical argument was before the Court in Tokman v. State, supra, wherein the Court held:
But we think an indictment, as here, charging capital murder in the course of a robbery permits instructions on both "robbery" and "pecuniary gain" as aggravating circumstances because the evidence supports both as it reveals the robbery was committed for pecuniary gain during the course of which the homicide occurred.
435 So.2d 669. In this case, as in Tokman, the evidence clearly shows that the robbery was committed for pecuniary gain.
Consequently, the aggravating circumstances enumerated in Instruction S-3 were proper and no error was committed by submitting them to the jury.

I.
The appellant next contends that the arbitrary and discriminatory imposition of the death penalty in this case violates the Eighth and Fourteenth Amendments. Specifically, he contends that Blacks are much more likely to receive the death penalty than Whites.
Although the appellant raised this issue in his motion for a new trial, he failed to introduce any evidence in support of the contention. In Gordon v. State, 349 So.2d 554 (Miss. 1977), this Court held:
The general rule is that a motion is at issue without any further pleading, but the allegations thereof do not amount to any proof of the facts stated therein. Shaw v. State, 188 Miss. 549, 195 So. 581 (1940). It devolves upon the movant to support his motion by proof. Reed v. State, 143 Miss. 686, 109 So. 715 (1926). It is also the rule that in the absence of proof in support of a motion, the presumption in favor of the correctness of the action of the trial court must prevail. Walters v. State, 127 Miss. 324, 90 So. 76 (1921).
349 So.2d 555. Since the appellant introduced no evidence to support his motion, the trial court's action in this regard is presumed to be correct.

J.
The appellant finally contends that the case should be reversed because the prosecutor improperly used all of his peremptory challenges to exclude all Blacks from the jury, in violation of the appellant's constitutional rights. However, the record on appeal does not reflect the race of the jurors peremptorily challenged by the prosecutor. It is elemental that facts set forth in briefs of counsel are insufficient to support an assignment of record. All facts relied on in the briefs must appear in the record to be considered by this Court. See, e.g., Gordon v. State, supra; Branch v. State, 347 So.2d 957 (Miss. 1977). Accordingly, the appellant failed to preserve this issue for review.
*222 Still, even if the facts alleged by the appellant were true and properly preserved, the argument would fail. This Court has held that a prosecutor's use of peremptory challenges is not subject to judicial review. Gaines v. State, 404 So.2d 557 (Miss. 1981); Coleman v. State, 378 So.2d 640 (Miss. 1979); Irving v. State, 228 So.2d 266 (Miss. 1969). In Gaines, supra, the Court explained the necessity of this holding:
The United States Supreme Court dealt with this issue in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
We cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.
In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case. (380 U.S. at 221-222, 85 S.Ct. at 837, 13 L.Ed.2d at 773)... .
404 So.2d 560.

IV.
We have carefully reviewed the record in this case as mandated by Mississippi Code Annotated section 99-19-105 (Supp. 1983). In doing so, we have concluded that the evidence supports the jury's finding of three statutory aggravating circumstances, and the death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Furthermore, the death sentence is neither excessive nor disproportionate when compared to other cases upholding the death sentence.[4]
Having found no reversible error, we affirm John Earl Booker's conviction of capital murder and sentence of death. Execution of the sentence is hereby set for Wednesday, May 2, 1984.
CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. WEDNESDAY, May 2, 1984, SET FOR DATE OF EXECUTION OF THE DEATH PENALTY AS PROVIDED BY LAW.
PATTERSON, C.J., ROY NOBLE LEE, P.J., BOWLING, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
HAWKINS, J., concurs in part and dissents in part.
SULLIVAN, J., not participating.

*223 APPENDIX "A"
DEATH CASES AFFIRMED BY THIS COURT:
Wilcher v. State, 448 So.2d 927 (Miss. 1984).
Caldwell v. State, 443 So.2d 806 (Miss. 1983).
Irving v. State, 441 So.2d 846 (Miss. 1983).
Tokman v. State, 435 So.2d 664 (Miss. 1983).
Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
Hill v. State, 432 So.2d 427 (Miss. 1983).
Pruett v. State, 431 So.2d 1101 (Miss. 1983).
Gilliard v. State, 428 So.2d 576 (Miss. 1983).
Evans v. State, 422 So.2d 737 (Miss. 1982).
King v. State, 421 So.2d 1009 (Miss. 1982).
Wheat v. State, 420 So.2d 229 (Miss. 1982).
Smith v. State, 419 So.2d 563 (Miss. 1982).
Edwards v. State, 413 So.2d 1007 (Miss. 1982).
Johnson v. State, 416 So.2d 383 (Miss. 1982).
Bullock v. State, 391 So.2d 601 (Miss. 1980).
Reddix v. State, 381 So.2d 999 (Miss. 1980).
Jones v. State, 381 So.2d 983 (Miss. 1980).
Culberson v. State, 379 So.2d 499 (Miss. 1979).
Gray v. State, 375 So.2d 994 (Miss. 1979).
Jordan v. State, 365 So.2d 1198 (Miss. 1978).
Voyles v. State, 362 So.2d 1236 (Miss. 1978).
Irving v. State, 361 So.2d 1360 (Miss. 1978).
Washington v. State, 361 So.2d 61 (Miss. 1978).
Bell v. State, 360 So.2d 1206 (Miss. 1978).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT:
Edwards v. State, 441 So.2d 84 (Miss. 1983).
Dycus v. State, 440 So.2d 246 (Miss. 1983).
Coleman v. State, 378 So.2d 640 (Miss. 1979).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY:
Williams v. State, 445 So.2d 798 (Miss. 1984).
Wiley v. State, 449 So.2d 756 (1984).
HAWKINS, Justice, concurring in part and dissenting in part:
In this case we are only concerned with a sentencing hearing. Booker has pleaded guilty to capital murder. For reasons set forth, I would remand for another sentencing hearing.

TESTIMONY OF WIDOW
The circuit judge was correct, in my view, in permitting the widow to testify. Even though the defendant had pleaded guilty to capital murder, in the sentencing hearing the jury is entitled to know the victim beyond a statistic.
In an ordinary criminal case the circuit judge in his discretion allows an accused to relate a few essential facts about his life, usually limited to his age, occupation, marital status, children, religion, and military service, if any.
A circuit judge should also have the discretion to permit testimony within this limitation about a murder victim. It is improper and erroneous to go beyond this, in my opinion.
*224 The widow in this case was asked many more questions, and testified more about the life of her husband and herself than was necessary or proper. Upon specific questioning, she testified about the years her husband had been in business, his occupation, the activities of her husband and herself that day prior to the tragedy, what they had for lunch, what she always prepared him for his Wednesday dinner, and the time she usually picked him up.
There then followed upon further questions the events of that day after she got the terrible news, the condition she found her husband, her tragic thoughts, her trip to the hospital, where her husband was buried. She was also asked if she and her husband were very close, as well as his general health.
Defense counsel objected to the widow testifying at all. He made no further motion to limit her testimony to essential information. He made no objection to any question asked. On his motion for a new trial, he assigned as error that the widow should not have been permitted to testify at all.
While the circuit judge was correct in over-ruling the defense objection to the widow even testifying, in chambers, and before the widow ever took the witness stand he should have ascertained what the state intended to prove by her, and given defense counsel an opportunity to object to testimony exceeding proper limits.
This broad examination should not have been permitted, and the majority has set a radical precedent, in my view, in failing to find anything improper about it.
While I filed no dissent in Evans v. State, 422 So.2d 737 (Miss. 1982) p. 743, our holding there troubled me. Evans had pleaded guilty to capital murder, as Booker did in this case. In Evans, however, the testimony of the victim's brother was limited to identifying his brother's corpse from a photograph. We justified our holding in Evans as proper for identification. No such justification exists for the latitude of examination of the widow in this case.

LIMITATION IN SENTENCING INSTRUCTION TO SPECIFIC MITIGATING 
CIRCUMSTANCES
Upon appeal, in a supplemental brief, counsel for Booker argues for the first time that the circuit judge erred in limiting the mitigating circumstances to:
1. At the time of the homicide, the Defendant was under the influence of drugs.
2. The Defendant has no significant history of prior criminal activity.
3. The age of the Defendant at the time of the crime.
Having failed to object when the instruction was given at trial, and making no point of this error in the motion for a new trial, or even in his first brief, I concur with the majority that there is a serious question as to whether we should consider the point at all. It hardly rises to any "plain error," in my view.
Since the majority does consider the point, however, it is also my view that Booker was entitled to an instruction that the jury could take into consideration any other mitigating circumstances which they believe warranted imposition of a life sentence rather than the death penalty.
Without laboring the point, this is the thrust of our holdings in Gray v. State, 375 So.2d 994, 1003-04 (Miss. 1979) cert. denied, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980), and Mississippi Model Jury Instruction No. 114.07(8) "Any other facts which you find from the evidence reasonably mitigates against imposition of the death penalty ..."
While the majority states there is nothing in the record to justify another mitigating factor than those given, and I am bound to concede the mitigating circumstances given are quite broad, it is also pertinent to observe this same argument was made by the state without success in Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981), Rehearing and Rehearing en banc denied Dec. 3, 1981, 662 F.2d 1116, cert. denied Apr. 26, 1982, 456 U.S. 949, 102 *225 S.Ct. 2021, 72 L.Ed.2d 474. In that case the Court of Appeals for the 5th Circuit set aside a death penalty conviction because the instruction was limited to specific mitigating factors, as in this case. The state, while conceding the propriety of adding a "Mother Hubbard" clause to the mitigating circumstances which could be considered by the jury, argued also there was no proof of any of other mitigating circumstances that the jury was given to consider. The Court of Appeals rejected this contention. Since we appear to be headed towards the same dead-end as the state reached in that case, I would reverse and remand at this stage for another sentencing hearing.
NOTES
[1] We would further point out that three of these contentions were not raised until the appellant filed his supplemental brief on January 11, 1984, only two days before the case was scheduled to be argued.
[2] This instruction is set forth on pages 217 and 218.
[3] For cases in support of this proposition see page 218.
[4] See Appendix "A".