483 So.2d 1330 (1986)
Donnie Ray JENKINS
v.
STATE of Mississippi.
No. 56039.
Supreme Court of Mississippi.
February 12, 1986.
*1331 Raiford L. Pittman, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Harold H. Brittain, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Donnie Ray Jenkins was convicted of arson and, as he was subject to the provisions of Mississippi Code Annotated § 99-19-81 (Supp. 1985), he was sentenced to twenty (20) years in the custody of the Department of Corrections without reduction, revocation or parole.
On June 1, 1982, Evelyn Dixon Smith and her sister, Jackie Dixon, went to a nightclub in North Gulfport. Evelyn had known Jenkins and Debra Moore all of her life, and she saw them that evening under less than congenial circumstances. After exchanging unpleasantries, Debra and Evelyn had a fight. When the fight was over, Evelyn and her sister went home. Evelyn and her child and Jackie and her two children all lived with Annie Dixon, mother of Evelyn and Jackie, in Mrs. Dixon's house. In the wee hours of the morning, Evelyn heard a bottle break and got up. She found the house aflame at both front and back doors, but managed to get everyone out to safety. The house itself was totally destroyed.
Michael Handy, a five-o'clock-jogger, was jogging down a path near the rear of Annie *1332 Dixon's yard when he heard voices and car doors slamming. It was a little before 5:00 A.M. Handy knew Jenkins and Moore, and he recognized their voices. He saw Jenkins go to the back door of the Dixon house and pour something from a can. Jenkins went around the house on the right side from the back door.
Handy concluded his run and went to work. When he got off work, he told Annie Dixon what he had seen. He then told the police and the fire marshal, Rodney Necaise.
Necaise found that two separate fires had been started, one at the back door and one at the front door. He also discovered that petroleum based by-products were present at the site.
At the conclusion of the state's case, Jenkins moved for a directed verdict, and called Debra Moore to the stand when that motion was overruled. Moore, who had pled guilty to the arson at a separate trial, then proceeded to exonerate Jenkins. According to Moore, Jenkins was not present when Moore burned the house down. Moore admitted denying any knowledge of the fire when first questioned by the police.
Jenkins took the stand next and denied any involvement in the arson.
The jury elected to accept the version offered by the state witnesses and reject the version offered by Moore and Jenkins. The guilty verdict followed.
Jenkins suggests three meritless assignments of error.

I.

WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Jenkins contends that it was error to refuse to sustain his motion for a directed verdict and also error not to grant him a new trial. He is wrong.
When a defendant requests a peremptory instruction in a criminal case or, after conviction, moves for a judgment notwithstanding the verdict, the trial judge must consider all of the evidence in the light most favorable to the state. Harper v. State, 478 So.2d 1017 (Miss. 1985).
When the motion is for a new trial, that issue is addressed to the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 396 (Miss. 1985). In a criminal trial, this motion invokes Rule 5.16 of the Uniform Criminal Rules of Circuit Court Practice. Under Rule 5.16 the motion will be granted only if required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Quinn v. State, 479 So.2d 706 (Miss. 1985).
The jury was offered conflicting testimony and resolved the conflict. That is one of the functions of the jury. Jackson v. Griffin, 390 So.2d 287, 289 (Miss. 1980).

II.

THE MOORE CONFESSION ISSUE.
Jenkins claims that he should have been allowed to cross-examine Necaise and put into evidence the testimony of Necaise concerning Moore's confession. Jenkins argues that the state prevented him from getting the benefit of Necaise's testimony about Moore's confession, and further that the state was allowed to use that same confession by Moore to impeach her when she testified, even though Jenkins properly objected to this course of action.
This argument sounds much better than it actually is.
Nothing in the record supports the contention that Necaise ever mentioned Moore's confession during his testimony, let alone that Jenkins was denied any cross-examination rights. There is a notation that an off-the-record conference was had at the bench.
An appeal without a record to support a contention can be a vain and foolish act. Records are made to avoid such things. As Walker, J., said in Booker v. State, 449 So.2d 209 (Miss. 1984), "It is elemental that facts set forth in briefs of counsel are insufficient to support an assignment of *1333 record. All facts relied on in the briefs must appear in the record to be considered by this Court." 449 So.2d at 221.
We further stated in Priest v. State, 275 So.2d 79 (Miss. 1973),
[T]he rule is that "when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case and whether its exclusion was actually harmful and prejudicial to the offerer." (cites omitted)
275 So.2d at 82.
Furthermore, if Jenkins sought to get before the jury the fact that Moore had confessed and exonerated him, he was successful in so doing when Moore took the stand and said that she alone committed the arson.

III.

DOES THE SENTENCE VIOLATE THE EIGHTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES AND SECTION 28 OF THE MISSISSIPPI CONSTITUTION?
We address ourselves to Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).
In Solem, supra, Helm, with six prior convictions, was convicted of uttering a bad check, and under applicable South Dakota law was sentenced to life in prison without parole. The Supreme Court of the United States found this sentence to be significantly disproportionate to the crime and thus prohibited by the Eighth Amendment. The Court then set the standard for proportionality analysis and stated,
In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.
463 U.S. at 291, 103 S.Ct. at 3010, 77 L.Ed.2d at 650.
In Rummel, supra, Rummel was sentenced to life imprisonment under the Texas recidivist statute upon being convicted of his third felony offense. Rummel challenged his sentence under the Eighth and Fourteenth Amendments to the United States Constitution, claiming that it was cruel and unusual punishment.
In upholding Rummel's conviction, the United States Supreme Court said:
The purpose of a recidivist statute such as that involved here is not to simplify the task of prosecutors, judges, or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.
445 U.S. at 284, 100 S.Ct. at 1144, 63 L.Ed.2d at 397.
The Court also stated, "Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some states will always bear the distinction of treating particular offenders more severely than any other states." 445 U.S. at 282, 100 S.Ct. at 1143, 63 L.Ed.2d at 396.
In Seely v. State, 451 So.2d 213 (Miss. 1984), we pointed out that Rummel does not foreclose proportionality reviews of sentences of imprisonment. Seely, at 215.
Jenkins has been convicted of burglary, uttering forgery, and now arson. *1334 We apply the proportionality analysis of Solem to this assignment.
The gravity of the offense and harshness of the penalty are proportionate to one another. Jenkins set fire to a house occupied by women and children. The fire was at both exits. Jenkins could not have foreseen that these people would escape and it even appears from the flash points of the fire that it was intended that no escape take place. The first prong of the proportionality test is thus satisfied.
Mississippi Code Annotated § 99-19-81 (Supp. 1985), provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment proscribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Mississippi Code Annotated § 97-17-1 (1972), provides:
Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years.
Since non-habitual offenders may also be sentenced to twenty (20) years, the second prong of the proportionality test is also met.
To meet the third prong of the test, the state points out the punishment for this crime in Louisiana, Alabama and Tennessee. Alabama Code Section 13A-7-41 (1975) provides for a sentence of life or not more than 99 years nor less than 10 years; pursuant to LSA-R.S. 14:51, the maximum sentence in Louisiana is 20 years; in Tennessee a maximum sentence of life and a minimum of not less than 10 years is provided, pursuant to Tennessee Code Annotated § 39-3-202.
Thus we see that on the facts of this case Rummel does not apply, and the proportionality test of Solem does apply. We have applied it. The state has met the test and Jenkins has flunked it. There is no merit to this assignment of error.
CONVICTION AND SENTENCE AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.