511 So.2d 1329 (1987)
John Earl BOOKER
v.
STATE of Mississippi.
No. DP-35.
Supreme Court of Mississippi.
May 13, 1987.
Rehearing Denied September 23, 1987.
Robert B. McDuff, Washington, D.C., for appellant.
*1330 Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.
En Banc.
WALKER, Chief Justice, for the Court:
This case was previously before this Court in Booker v. State, 449 So.2d 209 (Miss. 1984) wherein the appellant's conviction of capital murder, arising out of the death of Mr. O.M. Martin, and sentence of death were affirmed. His petition for rehearing was denied on April 18, 1984. Thereafter, the appellant petitioned the United States Supreme Court for a writ of certiorari. The petition was denied October 1, 1984, 469 U.S. 873, 105 S.Ct. 230, 83 L.Ed.2d 159. However, on petition for rehearing the United States Supreme Court granted certiorari and entered its order, 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626, on July 25, 1985, vacating the judgment of this Court and remanding the cause to us for further consideration in light of that Court's decision in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
The facts are set out at length in Booker, supra, and it is not necessary that we restate them here.
The central issue on remand from the United States Supreme Court is whether the prosecutorial comments concerning appellate review made on voir dire and in closing argument constitute such error as to deprive the appellant of a fair trial in light of the United States Supreme Court's decision in Caldwell, supra. The following statements were made during voir dire:
COUNSEL FOR DEFENDANT (Mr. McDowell): There is no such person. Okay. Is there anybody who does not understand that if the death penalty is recommended here that death is final, and there is no chance for a reversal or anything once that's been implemented? Do you understand the question? Do each of you understand that death is the ultimate penalty and that once it is carried out, there is no way to undo that decision?
This statement prompted the prosecutor to object, citing automatic appellate review as his grounds:
ASSISTANT DISTRICT ATTORNEY (Mr. Williams): Now, if the Court please, I object to that. There's an automatic appeal. I think that's highly misleading to this Jury panel.
The objection was sustained by the Court.
Thereafter, in closing argument the defense counsel raised the issue of appellate review by stating to the jury the following:
We are asking you not to put the State of Mississippi, the families of both these parties, through all of these remaining suffering that are sure to come from indefinite appeals. Now, we know the stories of death penalties. It is one appeal after another. It uses State money again and again and again. You know it goes on and on and on. You know when the last time someone was executed in Mississippi.
The State later replied in response as follows:
Your decision is not a hard decision as Mr. McDowell would have you believe. You're not sentencing this man to die and his going to be taken out of here for public execution. Mr. McDowell knows that. Yours is not the final say. He mentioned the prolific appeals that follow. That's true. He mentioned the last execution in this State  1968. So, your job is not to kill a person. Your job is to prescribe punishment, whether it is ever administered or not.
On remand, the appellant contends defense counsel did not have an opportunity to object when the State first mentioned appellate review on voir dire. He further argues that as the prosecutorial comment occurred during the course of the prosecutor's objection that defendant obviously could not and did not need to lodge his own separate objection. He further argues that after the trial judge sustained the State's objection he ordered defense counsel to move on, foreclosing further debate over the matter. In essence, he argues the *1331 court's action indicated its approval of the prosecutorial comment.
The State counters the appellant's contention by arguing that Booker's allegations concerning comments made by the prosecutor during voir dire are procedurally barred for failure of defendant to enter a contemporaneous objection at trial. We agree. Therefore, since the Mississippi Supreme Court's decision in Booker v. State, supra, rested on adequate and independent State grounds the judgment heretofore entered affirming Booker's conviction should be reinstated. As to the statements made during closing argument, the State was merely reiterating what had already been brought to light by the defense counsel. If error at all, it was "invited error" and should be so perceived under United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) where that Court said:
The situation brought before the Court of Appeals was but one example of an all too common occurrence in criminal trials  the defense counsel argues improperly, provoking the prosecutor to respond in kind, and the trial judge takes no corrective action. Clearly two improper arguments  two apparent wrongs  do not make a right result. Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.
* * * * * *
In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. Thus the import of the evaluation has been that if the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.
Courts have not intended by any means to encourage the practice of zealous counsel's going "out of bounds" in the manner of defense counsel here, or to encourage prosecutors to respond to the "invitation." Reviewing courts ought not to be put in the position of weighing which of two inappropriate arguments was the lesser. "Invited responses" can be effectively discouraged by prompt action from the bench in the form of corrective instructions to the jury, and when necessary, an admonition to the errant advocate.
In taking a second look at Booker, supra, in the light of Caldwell, as mandated by the United States Supreme Court, we look to that court's opinion for guidance. In Caldwell the United States Supreme Court said:
This Court has repeatedly said that under the Eighth Amendment "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." California v. Ramos, 463 U.S. [992], at 998-999 [103 S.Ct. 3446, at 3452, 77 L.Ed.2d 1171].
* * * * * *
Belief in the truth of the assumption that sentencers treat their power to determine the appropriateness of death as an "awesome responsibility" has allowed this Court to view sentencer discretion as consistent with  and indeed as indispensable to  the Eighth Amendment's "need for reliability in the determination that death is the appropriate punishment." Woodson v. North Carolina, 428 U.S. [280], at 305 [96 S.Ct. 2978, at 2991, 49 L.Ed.2d 944] (plurality opinion).
The United States Supreme Court recognized several reasons to fear substantial unreliability as well as bias in favor of death sentences where there are state-induced suggestions that the sentencing jury may shift its sense of responsibility to an appellate court. First, the jury's belief that they could delegate their sentencing responsibility to a higher court would not only postpone the defendant's right to a fair determination of the appropriateness of his death sentence, it would deprive him of a fair determination of that issue since an appellate court, unlike a capital sentencing *1332 jury, is wholly ill-suited to make such an evaluation. Second, when a sentencing jury is unconvinced that death is the appropriate punishment, it might nevertheless wish to send a message of extreme disapproval for the defendant's acts. Their determination that he suffer death might be made based on a feeling that they could err because the error would be corrected on appeal. Third, if the jury understood that only a death sentence would be reviewed, it would also understand that any decision to delegate responsibility for sentencing could only be effectuated by returning that sentence. This creates the danger that a defendant could be executed in the absence of any determination that death was the appropriate punishment. Fourth, a jury acting under the misconception that the responsibility for any ultimate determination of death rests with others would present an intolerable danger that they could in fact choose to minimize the importance of their role.
This Court has condemned unwarranted and improper comments made by the prosecution during trial, Smith v. State, 457 So.2d 327 (Miss. 1984); Howell v. State, 411 So.2d 772 (Miss. 1982); Tudor v. State, 299 So.2d 682 (Miss. 1974), especially where the comments of the prosecutor lead a jury to believe their verdict is subject to review, Wiley v. State, 449 So.2d 756 (Miss. 1984), cert. denied, ___ U.S. ___, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986), Williams v. State, 445 So.2d 798 (Miss. 1984), cert. denied, 469 U.S. 1117, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985) and Hill v. State, 432 So.2d 427 (Miss. 1983), cert. denied, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983).
There is, however, a recognized exception to this rule. Such exception exists where the objectionable statement was invited or responsive to the statement of the defense counsel and has been recognized by the United States Supreme Court in Darden v. Wainwright, 477 U.S. 187, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) and United States v. Young, supra. This Court has held that prosecutorial comments which under normal circumstances would constitute error do not when the statements merely reiterate statements of defense counsel. Burns v. State, 438 So.2d 1347 (Miss. 1983). We have also recognized and applied the so-called "invited error" doctrine as recently as our decision in Griffin v. State, 504 So.2d 186 (Miss. 1987).
In considering the case at hand in the context of Caldwell, as such concerns the issue of invited error, we must note that in Caldwell the prosecutor's comment on the system of appellate review followed, and was occasioned by, defense counsel's argument that the defendant would remain in prison the remainder of his life if the jury would mete out a life sentence. In finding no invited error, the High Court could find no rational link between the possibility of the specific misimpression left by defense counsel that a life sentence would entail no parole, and the argument used by the prosecutor that the decision of the jury, in rendering the death penalty, would be reviewable. Caldwell, 472 U.S. at 336-337, 105 S.Ct. at 2643-2644, 86 L.Ed.2d at 244. Booker presents a situation considerably different from Caldwell in that, as quoted earlier in that opinion, the State prosecutor's first mention of an automatic appeal came in the form of an objection to a statement by defense counsel. Thereafter, defense counsel again, in closing argument, resurrected the subject of appellate review subsequent to imposition of the death penalty by commenting that such gives rise to "one appeal after another" prompting the prosecutor to respond. In reviewing the statements in the context in which they were made, we conclude that the prosecutor's remarks were "invited," and did no more than "right the scale" tipped by defense counsel's remarks. Young, supra. Additionally, a "rational link" can be made between the arguments of defense counsel and the response in kind of the prosecutor. Caldwell, supra. Now, having reviewed our prior decision in light of Caldwell, as mandated by the United States Supreme Court, we are of the opinion that our former determination should be and is reaffirmed.
Therefore, the judgment of conviction and sentence that the appellant, Booker, suffer the penalty of death as provided by *1333 law is affirmed, and May 27, 1987 is fixed as the date of his execution.
AFFIRMED.
ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., concurs in result only.
ROBERTSON, Justice, concurring:
Via Booker v. Mississippi, 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985), we have been directed to consider further the above case in the light of the United States Supreme Court's decision in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The majority opinion does this and explains carefully why today's facts and the context in which the prosecuting attorney made the said-to-be offending argument to the jury differ from Caldwell. As I see it, defense counsel introduced the discussion of the appellate process in capital cases quite consciously and as a part of his trial strategy. The prosecuting attorney's comments were a response to what defense counsel had said. In this sense the otherwise impermissible prosecution argument may be seen as invited error, while under the facts of Caldwell there quite clearly was no "invitation" extended the prosecution to comment upon the appellate process.
My concern is one passage in the Caldwell opinion, a passage that suggests that this factual difference, so heavily relied upon by the majority, may be without legal significance. I refer to the paragraph which reads
Respondent [the State of Mississippi] next defends the view of the Mississippi Supreme Court that the prosecutor's argument must be understood as a response to the defense counsel's argument, and that it was not unreasonable in that context. But neither respondent nor the court below explains how the prosecutor's argument was less likely to have distorted the jury's deliberations because of anything defense counsel said. [Emphasis added]
105 S.Ct. at 2643, 86 L.Ed.2d at 244.
This last sentence seems to suggest that the invited error theory of the majority may be legally untenable. On the other hand, this is Caldwell's only mention of the point and the majority correctly notes that the Supreme Court recognized the invited error theory in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) decided in the same term. To be sure, the defense's "invitation" in Young was classified as improper argument, while the argument of Booker's counsel may hardly be so labeled. And Young emphasizes that the court does not encourage or sanction prosecutorial "response-in-kind." 470 U.S. at 12, 105 S.Ct. at 1045, 84 L.Ed.2d at 10. Still, what today's majority says seems not inconsistent with the tenor of Young.
If the Caldwell Court had intended to instruct us that the invited error theory had no place in our reconsideration of the case at bar, I tend to think that Court would have said so more clearly, particularly in light of Young. Because Caldwell provides us only the soft suggestion of a single sentence, I concur in the majority's determination to follow the rationale of the Young case. Accordingly, I would affirm.
DAN M. LEE, PRATHER and SULLIVAN, JJ., join this opinion.