## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-00410-SCT

*CALVIN BANKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/19/1999 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD BURDINE |
| | MARK ANDREW CLIETT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/12/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/3/2001 |

**BEFORE BANKS, P.J., SMITH AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Calvin Banks was convicted in the Circuit Court of Clay County of the crime of capital murder. As a habitual offender, Banks was sentenced to life imprisonment without the possibility of parole or probation. Banks appeals and raises the following issues:

**I. WHETHER THE TRIAL COURT ERRED IN ALLOWING HOMER IVY TO TESTIFY CONCERNING A CONVERSATION HAD WITH BANKS, WHILE IVY WAS CONDUCTING RELIGIOUS COUNSELING.**

**II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF TONY ABSHIRE CONCERNING BANKS' POOR MONEY MANAGEMENT SKILLS.**

**III. WHETHER THE TRIAL COURT ERRED IN ALLOWING CELLMATE CONFESSION/ADMISSION HEARSAY TESTIMONY.**

**IV. WHETHER THE DISTRICT ATTORNEY'S REFERENCE TO BANKS AS A PREDATOR DURING CLOSING ARGUMENT WAS REVERSIBLE ERROR.**

**V. WHETHER REFERENCE BY THE DISTRICT ATTORNEY TO THE "BOLOGNA**

**SANDWICH" CONSTITUTED REVERSIBLE ERROR.**

**VI. WHETHER THE TRIAL COURT ERRED IN OVERRULING BANKS' MOTION FOR J.N.O.V. OR IN THE ALTERNATIVE, FOR A NEW TRIAL AS THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE.**

¶2. Finding no error in Banks' conviction and sentence, we affirm.

## STATEMENT OF THE FACTS

¶3. Banks had been gambling in a card game with some friends not far from the home of Amy Ware for most of the afternoon of August 14, 1993, the day Ware was strangled to death. After complaining of having run out of money, Banks left the card game around 4:00 p.m. to "go get some more money." During the time that Banks was absent from the card game, the 80-year-old victim was murdered and robbed, with her purse being emptied, and the pockets on her pants left inside out.

¶4. Banks had been acquainted with the victim previously; she used to make lunch for him and had agreed to keep a few of his belongings while he was homeless and trying to find a place to stay. No signs of forced entry were found at the crime scene. At a time close in proximity to the crime, Banks was seen on the victim's front porch, apparently dusting himself off. Banks then reappeared at the card game, with money and a sack of clothes. Fingerprints were found at the scene not belonging to the victim or Banks.

¶5. When the police went to question Banks, he ran off, later announcing to a friend that he thought he might be in some trouble. When the police caught up with him, Banks gave a statement filled with contradictions. A couple of months after Banks' arrest, Homer Ivy, a close friend of the victim and deacon from a local church, visited the inmates at the county jail, as was his usual custom, to "spread the gospel" to those incarcerated. Ivy's message that day was an interpretation of the Lord's Prayer, specifically focusing on the need to forgive others. After the message was completed, Banks called Ivy back to his cell and discussed forgiveness with him. Ivy instructed Banks that you must forgive all to serve the Lord. Banks agreed and offered his hand to Ivy, with the two shaking in agreement.

¶6. After his arrest, Banks told a fellow inmate, Willie Walker, that he had gone to the victim's house to get some money and that he found her dead. Banks told another inmate, Bobby Wofford, that he had killed and would do so again if pushed. When asked by Wofford whether he killed Ware, Banks remained silent.

¶7. Following the denial of his motion for judgment notwithstanding the verdict or a new trial, Banks appealed his conviction and sentence.

## DISCUSSION

**I. WHETHER THE TRIAL COURT ERRED IN ALLOWING HOMER IVY TO TESTIFY CONCERNING A CONVERSATION HAD WITH BANKS, WHILE IVY WAS CONDUCTING RELIGIOUS COUNSELING.**

¶8. Banks claims, as he did in his original appeal,[(1)] that the trial court committed reversible error in allowing Homer Ivy to testify regarding their conversation. We rejected Banks' contention that the admission of evidence by Ivy violated M.R.E. 505 (Priest-Penitent Privilege), as Ivy was not a pastor. *See **Banks v. State**,* 725 So. 2d 711, 716-17 (Miss. 1997). While no objection was offered when Ivy took the stand in

the second trial and similarly testified concerning inquiries from Banks about forgiveness, we find no basis for a different view on the admissibility of this testimony than was expressed in Banks' first appeal. *See Lambert v. State,* 574 So. 2d 573, 575 (Miss. 1990) (holding "failure to object to testimony when offered at trial results in the waiver of any right to present the matter on appeal.").

¶9. Additionally, Banks argues that, by admitting Ivy's testimony, he was denied his Sixth Amendment right to have an attorney present when being questioned. Banks argues that because the Clay County Sheriff's Office and the West Point Police Department knew that Ivy was a key prosecution witness and close friend of the victim, Ivy's presence in the jail was for the sole purpose of eliciting a confession, and not to "spread the gospel." Other than this bare allegation, Banks offers no evidence nor legal precedent to support this allegation. Therefore, this issue is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF TONY ABSHIRE CONCERNING BANKS' POOR MONEY MANAGEMENT SKILLS.

¶10. Tony Abshire, Banks' employer at the time of Ware's death, testified that Banks' personality typically changed over the course of a week, as Banks inevitably ran out of money before payday. Once Banks ran out of money, he became very hard to get along with and was very irritable. The day before Ware's murder, Abshire and Banks argued over $60.00 that was deducted from Banks' paycheck for Banks' actions in damaging some equipment. Finally, Abshire testified that Banks failed to report to work on the day after Ware's murder.

¶11. While admitting that Abshire's testimony may have been relevant, Banks argues that it should have been excluded under M.R.E. 403, in that any relevance was outweighed by the danger of unfair prejudice, and that he was actually unfairly prejudiced at trial. However, a review of M.R.E. 403 indicates the rule actually states, "relevant evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, . . . ."

¶12. The State admits using Abshire's testimony because of the prejudicial effect it would have on Banks. Such is the case with all evidence used to obtain a criminal conviction. Claiming prejudice is not enough to exclude evidence of one's motive to commit a crime. Our rules require more.

¶13. As a court of last resort, we have consistently held, "[t]here is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." *Branch v. State,* 347 So. 2d 957, 958 (Miss. 1977). Banks makes no argument and cites no authority that the probative value of Abshire's testimony was *substantially* outweighed by unfair prejudice. Thus we affirm the trial court's decision overruling Banks' objection to Abshire's testimony.

### III. WHETHER THE TRIAL COURT ERRED IN ALLOWING CELLMATE CONFESSION/ADMISSION HEARSAY TESTIMONY.

¶14. Bobby Wofford and Willie Walker, former cell mates of Banks, testified for the State regarding statements made by Banks pertaining to the murder of Ware. Rather than making a contemporaneous objection to the testimony of either witness, counsel for Banks waited until each had concluded their respective testimony, the State had called and presented four additional witnesses, and until after the State had rested its case-in-chief, before objecting on the grounds that the prejudicial effect of the testimony outweighed any probative value. As such, this objection was procedurally barred, and the trial court

properly overruled Banks' untimely objection.

### A. *Did the trial court err in allowing these statements into evidence as they were based on inadmissible hearsay?*

¶15. Procedural bar aside, Banks argues that the testimony offered by Wofford and Walker regarding statements Banks made pertaining to Ware's murder constitutes impermissible hearsay. Under M.R.E. 801, the statements complained of by Banks do not amount to hearsay. Under M.R.E. 801(d)(2), "a statement is not hearsay if "[t]he statement is offered against a party and is (a) his own statement, . . . ." *Sudduth v. State,* 562 So. 2d 67, 70 (Miss. 1990).

### B. *Should this testimony have been excluded due to the State's failure to disclose these witnesses in Banks' first trial?*

¶16. Banks argues that the testimony of these two individuals should have been excluded as they were not disclosed to him as potential witnesses prior to the first trial of this matter. A review of the record indicates that each witness testified that they came forward with this information shortly before Banks' second trial.

¶17. This assignment of error is without merit.

## IV. WHETHER THE DISTRICT ATTORNEY'S REFERENCE TO BANKS AS A PREDATOR DURING CLOSING ARGUMENT WAS REVERSIBLE ERROR.

¶18. Banks argues that the sole purpose of the District Attorney referring to him as a predator was to vilify him, which resulted in unfairly prejudicing Banks in the eyes of the jury. "While a prosecutor is allowed wide latitude in cross-examination and in closing argument, fundamental fairness requires that a defendant should not be subjected to testimony and tactics which are highly prejudicial and inflammatory . . . ." *Acevedo v. State,* 467 So. 2d 220, 226 (Miss. 1985) (citations omitted). Arguing that he was denied his constitutional right to a fair trial, Banks submits that his conviction and sentence should be reversed and a new trial ordered.

¶19. The State responds that absent in the record is any objection made by Banks regarding the "predator" comment. We also take note that the "predator" comment was isolated, occurring only once during Banks' trial. For this Court to consider claims of alleged erroneous comments of the prosecuting attorney in closing arguments, a contemporaneous objection must have been made; otherwise, the point is deemed waived. *Handley v. State,* 574 So. 2d 671, 679 (Miss. 1990). Procedural bar aside, the State argues that we have often held, "considerable latitude must be allowed counsel in arguing the case before the jury." *Coley v. State,* 378 So. 2d 1095, 1097 (Miss. 1980). Further the State argues that, given the facts of this case, the District Attorney's description that those who prey on "little old ladies who live alone" as "predators" is particularly appropriate, and well within the bounds of permissible argument.

¶20. We find Banks' fourth assignment of error to be procedurally barred and, in the alternative, lacking any merit. We find that the "predator" comment in the context offered was within the wide latitude we afford counsel making their closing arguments. *See Johnson v. State,* 477 So. 2d 196, 209 (Miss. 1985).

## V. WHETHER REFERENCE BY THE DISTRICT ATTORNEY TO THE "BOLOGNA SANDWICH" CONSTITUTED REVERSIBLE ERROR.

¶21. In attacking Banks' defense during closing argument, the District Attorney pointed out the many inconsistencies in Banks' initial statement to the police, including conflicting statements about whether he had eaten anything while in the victim's home. "When asked did you eat anything in the house, . . ., he (Banks) says no, I didn't eat anything and then two sentences later, he's saying, oh yeah, I did . . . . I ate a bologna sandwich." Banks argues that this argument violated this Court's prior opinion reversing the trial court for admitting bite mark evidence, and was extremely prejudicial to his defense. Banks claims that in Clay County, Mississippi, this case has become known as the "bologna sandwich" case and any mention of the sandwich unfairly prejudiced him in the eyes of the jury.

¶22. While no objection was offered to the bologna sandwich argument by the District Attorney, *Banks I* was not reversed for references to the bologna sandwich. Rather, we held that to allow the State the opportunity to examine and test the bologna sandwich, then denying that same opportunity to Banks because the sandwich was destroyed, rendered his trial fundamentally unfair. *See **Banks**,* 725 So. 2d at 713.

¶23. Here, the District Attorney was simply demonstrating inconsistencies in Banks' initial statement to the police. This, in turn, was relevant to the question of Banks' credibility. As Banks makes no *Miranda* type objection to the statements he gave police and no issue was ever made of venue in Clay County, we find that this objection is without merit.

### VI. WHETHER THE TRIAL COURT ERRED IN OVERRULING BANKS' MOTION FOR J.N.O.V. OR IN THE ALTERNATIVE, FOR A NEW TRIAL AS THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE.

¶24. In determining whether a jury verdict is against the overwhelming weight of evidence, we must accept as true evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. *Collier v. State,* 711 So. 2d 458, 461 (Miss. 1998). Only when the verdict is so contrary to the overwhelming weight of evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. *Herring v. State,* 691 So. 2d 948, 957 (Miss. 1997).

¶25. Banks offers three reasons in his attack on the weight of evidence. First, three people testified that Banks could not have been at the scene of the crime at the time of death arrived at by the State's expert; while only one witness testified that Banks was on the victim's porch around the time of the murder. Banks believes his alibi of playing cards at the time of Ware's strangulation was the most believable postulation. Secondly, Banks points to the fact that none of the fingerprints nor any of the hairs recovered at the scene belonged to him. Finally, Banks asserts that this is a circumstantial evidence case and the fact the State failed to prove its case to the exclusion of every other reasonable hypothesis warrants that his conviction and sentence be reversed and remanded.

¶26. Banks' attack is focused on the weight, rather than the sufficiency, of the evidence. This Court consistently holds that it is the jury's duty to resolve conflicting testimony:

> Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify,

augumented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.

*Groseclose v. State,* 440 So. 2d 297, 300 (Miss. 1983) (citations omitted).

¶27. The State, while not presenting direct, eyewitness testimony, did present ample evidence to support a conviction. There is undisputed evidence Banks left a card game needing money and returned some time later with money to continue playing cards, without offering an explanation about the source of the money. Ware, the victim, had in the past befriended Banks by supplying him with food and a place to store his clothes while he was homeless. Ware was found strangled to death, with her purse and pockets emptied, and no signs of a forced entry were found. Also, Banks was observed on Ware's front porch in the general time frame she was believed to have been murdered. Add to this inconsistent statements made by Banks to the police, along with the incriminating statements Banks made to Homer Ivy and his former cellmates, and we are able to find substantial evidence of Banks' guilt.

¶28. Even accepting Banks' argument that conflicting evidence was offered as to Banks' guilt, he fails to overcome our case law which holds that it is the jury's duty to resolve conflicting testimony and evidence in determining a parties guilt or innocence. *See Jenkins v. State,* 483 So. 2d 1330, 1332 (Miss. 1986). As such, no error lies in the trial court's failure to grant Banks' relief in the form of a JNOV or a new trial.

## CONCLUSION

¶29. For the foregoing reasons, we affirm the judgment of the Clay County Circuit Court.

¶30. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION, ARE HEREBY AFFIRMED**.

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, COBB, DIAZ AND EASLEY, JJ., CONCUR.**

1. This matter was originally decided by this Court in 1997. *See **Banks v. State**,* 725 So. 2d 711 (Miss. 1997). We reversed and remanded Banks' conviction and sentence, finding the admission of an item of physical evidence (bologna sandwich) that was offered to tie Banks to the crime, and which neither Banks nor his correlative expert were able to examine, rendered his trial fundamentally unfair. *Id.* at 713.