538 So.2d 1181 (1989)
Clyde ASHLEY, Jr.
v.
STATE of Mississippi.
No. 58141.
Supreme Court of Mississippi.
January 25, 1989.
*1182 Dale H. McDavitt, McComb, for appellant.
Mike Moore, Atty. Gen., by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Out of the shoplifting and in-store consumption of two cans of sardines, followed by an inept effort to steal the money to pay for the sardines from the home of an elderly woman, Clyde Ashley, Jr. had been sentenced as a recidivist to spend the rest of his life in prison. While we affirm Ashley's conviction of the crime of burglary, we reverse on the question of sentence.

II.

A.
Clyde Ashley, Jr. was born on August 12, 1944. On December 13, 1985, having committed over the years a series of burglaries and one attempted robbery, each time under the influence of alcohol, and having served some twenty-three years of his life in the penitentiary, Clyde Ashley, Jr. was returned to the free world. Thirty-two days later, once more while drinking, Ashley rather pathetically and pitifully again ran afoul of the law.
Eva Washington is an eighty-five-year-old widow who lives in a small four-bedroom home in Osyka, Mississippi. Between 2:00 and 3:00 a.m. on January 15, 1986, the inebriated Ashley knocked on Washington's door and asked to be let in because it was cold outside. Washington refused and Ashley left, only to return at 8:00 the same morning. Ashley entered through an open door and asked Washington if she would lend him a dollar. Washington told Ashley that she did not have any money and he left. Shortly over an hour later, Washington *1183 left her home, locking the front door behind her, and rode a bus to McComb.
Sometime after noon on the same day, Ashley appeared at the Red & White Store, a small grocery store in Osyka. Alicia Moudigil, the wife of the store's proprietor, greeted Ashley and asked if he needed any help. He said, no, that he was just looking around. Ashley wandered around the store for a few minutes. Moudigil noticed him open and eat two cans of sardines right there in the store. She then began dialing the telephone number of a local bank where her husband, Ray Moudigil, had gone to make a deposit. Ashley approached the counter and she asked if that was all he wanted, then an instant later spoke into the telephone "Is Ray there?" Ashley started running toward the door.
Ray Moudigil left the bank immediately and found Ashley hiding behind a cafe located across the street from Eva Washington's house. Moudigil asked Ashley if he had eaten the sardines and said he needed to be paid for them. Ashley said he was going to his aunt's house, referring to Washington's house, and he would bring back the money. Moudigil did not doubt Ashley at the time. Rather, he stayed in front of the house and waited for Ashley to return. After some twenty-five minutes had elapsed and no Ashley, Moudigil called the police. A deputy sheriff arrived and waited some forty-five minutes, then entered and searched the house. He found Ashley in a two foot by three foot closet, covered with a coat.
Moudigil said he saw several opened sardine cans at the store, "could be $3.00, $4.00." Sardines cost approximately 71 cents per can. It subsequently developed that Ashley had entered Eva Washington's house by breaking the wood around a dead-bolt lock.

B.
On February 26, 1986, Ashley was formally charged in an indictment returned by the Pike County Grand Jury with burglary of a dwelling. Miss. Code Ann. § 97-17-19 (1972). Ashley was also charged as an habitual offender. Miss. Code Ann. § 99-19-83 (Supp. 1988). The case was called for trial in the Circuit Court of Pike County on March 18, 1986, whereupon the jury returned a verdict of guilty as charged. In a separate sentencing hearing, the Circuit Court found that Ashley had been convicted previously of several prior burglaries, that he had served more than one year in the penitentiary, and that he had been convicted previously of a crime of violence, to-wit: attempted robbery. The Court adjudged Ashley an habitual offender and sentenced him to the custody of the Mississippi Department of Corrections for the remainder of his natural life without benefit of probation or parole. Miss. Code Ann. § 99-19-83 (Supp. 1988).
Ashley now appeals both his conviction and sentence.

III.
Ashley first charges that the Circuit Court erred when it overruled his motion for judgment of acquittal made at the conclusion of all of the evidence and renewed following the jury's verdict.
The crime of burglary has two essential elements, the unlawful breaking and entering and the intent to commit some crime once entry has been gained. Mack v. State, 481 So.2d 793, 795 (Miss. 1985); Winston v. State, 479 So.2d 1093, 1095 (Miss. 1985); Moore v. State, 344 So.2d 731, 735 (Miss. 1977).
Eyewitness testimony established the "breaking," as Ray Moudigil saw Ashley enter the house. Eva Washington had given Ashley no permission to enter her house; indeed, she had previously the same day denied him entry. Subsequent inspection revealed that the wood around the dead-bolt lock had been "splintered".
Ashley challenges the prosecution's evidence of the intent element of the offense. He points to the fact that nothing was found missing from the house. His theory appears to be that he entered the Washington house out of fear of apprehension for his theft of the sardines and not to commit any crime within the Washington home. Before entering, however, Ashley told Ray *1184 Moudigil that "he was going in the house and bring the money.... he was going to go get the money." Such evidence is legally sufficient to undergird the jury's verdict, the effect of which is a finding that Ashley entered Washington's home with intent to commit larceny therein.
The fact that Ashley needed only a couple of dollars and that it may not from the record be inferred that he had an intent to steal more than $100, see Miss. Code Ann. §§ 97-17-41 and -43 (1972), avails Ashley nothing. The word "crime" in our burglary statutes includes misdemeanors as well as felonies. See Newburn v. State, 205 So.2d 260, 265 (Miss. 1967); see also Faust v. State, 221 Miss. 668, 675, 74 So.2d 817 (1954). Having in mind our familiar scope of review, we hold that the Circuit Court correctly refused to direct in Ashley's favor a verdict of acquittal both before and after return of the jury's verdict. See Winston v. State, 479 So.2d 1093, 1095-96 (Miss. 1985).

IV.
Ashley next argues that the Circuit Court erred when it refused to submit to the jury his requested Jury Instruction No. D-10. The requested instruction reads as follows:
The Court instructs the Jury if you find from the evidence that Defendant entered the dwelling house of EVA WASHINGTON out of fear of apprehension by law enforcement officials not with the intent to commit a crime within the dwelling house of EVA WASHINGTON, then you should find the Defendant not guilty. (emphasis added)
Our trial courts are required to instruct juries regarding issues of fact only where there appears in the record credible evidence upon which the jury might reasonably find the fact in favor of the requesting party. See, e.g., Phillips v. State, 493 So.2d 350, 353-54 (Miss. 1986); Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985). Here Ashley did not testify, so we have no direct evidence that he may have broken into Washington's home "out of fear of apprehension by law enforcement officials." Moreover, Ray Moudigil was not a law enforcement officer. In the present state of the record we may only regard as idle speculation the suggestion that Ashley entered the Washington home for any purpose other than "to go get the money."
The Court correctly denied Ashley's Instruction No. D-10. There are no further issues raised regarding the guilt phase of Ashley's trial possessing merit or requiring discussion.

V.
Ashley charges that the Circuit Court erred when it sentenced him to life imprisonment without eligibility for probation or parole. In light of the fact that Ashley's substantive conduct involved, first, the theft of a few cans of sardines and then a burglary in an effort to get the money, i.e., a few dollars, to pay for the sardines, he argues that a sentence of life imprisonment without parole is unconstitutionally severe.
Ashley was sentenced under Miss. Code Ann. § 99-19-83 (Supp. 1988) which provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
The Circuit Court found that Ashley had been convicted of the crime of burglary on April 21, 1972; of the crime of attempted robbery on April 17, 1980; and of the crime of burglary on October 19, 1982; and that Ashley had in fact served a term of more than one year in the state penitentiary. The Court then held that the crime of attempted *1185 robbery was a crime of violence within Section 99-19-83.
Preliminarily, Ashley challenges this last holding and argues that attempted robbery is not a crime of violence. We have held that armed robbery is a crime of violence, see King v. State, 527 So.2d 641, 646 (Miss. 1988), but have never faced the precise question presented today. "Simple" robbery is defined in our law as follows:
§ 97-3-73. Robbery-definition.
Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery. [emphasis ours]
Read in connection with our statute on attempts, Miss. Code Ann. § 97-1-7 (1972), we may only hold that attempted robbery is a crime of violence. Cf. McQueen v. State, 473 So.2d 971, 972-73 (Miss. 1985).
Still, that the seemingly undue harshness of a sentence of life imprisonment without eligibility for probation or parole for Ashley's great sardine caper is evidenced by the district attorney's comment at the sentencing hearing:
If the Court decides to sentence him under 99-19-81, the State wouldn't oppose it.
Indeed, Ashley seizes upon this comment and urges that the Court erred in not sentencing Ashley to ten years without eligibility for probation or parole, which would have been the correct sentence under Section 99-19-81. The Circuit Court would certainly have had the authority to accede to the prosecution's request in this regard  as it may (but is not required to) accede to prosecution requests for reducing other charges laid in an indictment. Our law is not susceptible of mechanical operation, nor are our courts robots. The fact is, however, that the Court did not reduce the charge and instead imposed a sentence under Section 99-19-83.
In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court held that a recidivism sentence of life imprisonment without parole was subject to scrutiny under the cruel and unusual punishment clause of the Eighth Amendment to the Constitution of the United States. When faced with such an issue, trial courts are charged to engage in proportionality analysis under the Eighth Amendment
guided by objective criteria, including (i) harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentence imposed for commission of the same crime in other jurisdictions.
463 U.S. at 292, 103 S.Ct. at 3011, 77 L.Ed.2d at 650. See also Jenkins v. State, 483 So.2d 1330 (Miss. 1986); and Presley v. State, 474 So.2d 612 (Miss. 1985).
In Clowers v. State, 522 So.2d 762 (Miss. 1988), we accepted our responsibility to respect the Solem teachings. We there stated:
The fact that the trial judge lacks sentencing discretion does not necessarily mean the prescribed sentence meets federal constitutional proportionality requirements. Notwithstanding § 99-19-81, the trial court has authority to review a particular sentence in light of constitutional principles of proportionality as expressed in Solem v. Helm. That authority is a function of the Supremacy Clause. U.S. Const.Art. VI, cl. 2; Bolton v. City of Greenville, 253 Miss. 656, 666, 178 So.2d 667, 672 (1965).
Presley v. State, 474 So.2d 612 (Miss. 1985) is similarly instructive. In that case the defendant stole two steaks and displayed a pocket knife in the course of his escape, thus technically committing armed robbery, a crime of violence. We reversed the recidivism sentence, however, and remanded to give the defendant the opportunity to present evidence in mitigation of sentence.
On the authority of Solem, Clowers and Presley, we vacate the sentence imposed upon Ashley and remand for an additional sentencing hearing and for resentencing consistent with the Solem teachings.
*1186 CONVICTION OF BURGLARY AFFIRMED; SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
PITTMAN, J., not participating.