# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-01877-SCT

*CHARLIE DEMEKO LONG a/k/a MEKO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/2008 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROSS R. BARNETT, JR. |
| | JAMES T. McCAFFERTY, III |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/06/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Charlie Demeko Long was convicted of one count of possession of cocaine with the intent to sell and one count of sale of cocaine in the Circuit Court of Grenada County. Long was sentenced as a habitual offender to life imprisonment on each count, to be served consecutively in the custody of the Mississippi Department of Corrections. Long's post-trial motion was denied and he filed this appeal. We find that the issues raised by Long are without merit and that his conviction should be affirmed.

# FACTS

¶2.     On March 4, 2008, confidential informant Wesley Rogers made a drug buy from Charlie Demeko Long for the Grenada Police Department.  Officer Mark Beck testified that both Rogers and his vehicle were searched and outfitted with audio and video recording equipment prior to the buy.  Rogers telephoned Long and arranged the purchase of $80 worth of crack cocaine.  The pair agreed to meet at Spain's Supermarket.  Five officers in two surveillance vehicles followed Rogers to Spain's.  At Spain's, Rogers exited his vehicle and got into a white Toyota Camry owned by Lakendal Barnes, Long's girlfriend.  The video recording and still photographs show Rogers handing the person in the white Camry the $80 and the person handing Rogers what proved to be 0.7 grams of crack cocaine.  The face of the person in the car cannot clearly be seen on the video recording.  However, Rogers testified that Long was the person in the car who had sold the crack cocaine to Rogers.  Further, the recording shows that the seller was wearing a gold watch and ring on his left hand, and that there was a yellow key chain on the keys in the ignition and a cell phone in his lap.  Officers removed similar items from Long upon his arrest.  Rogers testified that he had observed Long sell drugs some fifteen to twenty times.

¶3.     On March 18, 2008, Barnes was driving the white Camry with Long as a passenger when she was stopped for a seatbelt violation.  Barnes testified that, when she was pulled over, Long attempted to pass her some drugs, but she refused.  Officers searched the car and located 4.8 grams of crack cocaine under the passenger seat.  Upon the officers' discovery of the drugs, Long attempted to flee.  Barnes testified that she previously had observed Long cutting up large amounts of drugs, selling drugs, and counting large sums of money.  Barnes

2

identified Long as the person on the videotape selling drugs to Rogers, although she was not present in the car at that time.

¶4.     Long was charged with possession of cocaine with intent to sell and one count of sale of cocaine in the Circuit Court of Grenada County. Barnes also was charged with possession in connection with the crack cocaine found under the passenger seat of her car. After a trial in which Long, assisted by counsel, briefly represented himself, Long was convicted on both counts and sentenced as a habitual offender to life imprisonment on each count, to be served consecutively in the custody of the Mississippi Department of Corrections. Long's post-trial motion was denied and he filed this appeal.

## ANALYSIS

### I. Whether the verdict was against the overwhelming weight of the evidence.

¶5.     This Court reviews a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Dilworth v. State*, 909 So. 2d 731, 737 (Miss. 2005). "A greater quantum of evidence favoring the [S]tate is necessary for the [S]tate to withstand a motion for a new trial, as distinguished from a motion for J.N.O.V." *Id*. (quoting *Pharr v. State*, 465 So. 2d 294, 302 (Miss. 1984)). "Accordingly, we defer to the discretion of the trial judge, and '[w]e will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.'" *McClendon v. State*, 945 So. 2d 372, 385 (Miss. 2007) (quoting *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983)). This Court has further said:

> However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient

3

evidence, does not mean that acquittal was the only proper verdict. Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.

***Dilworth***, 909 So. 2d at 737.

¶6. Long asserts that a reasonable juror could not conclude beyond a reasonable doubt that he possessed and sold cocaine. Long further asserts that the State's case was "based almost entirely upon the testimony of apparent criminals" Wesley Rogers and Lakendal Barnes. He cites ***Mister v. State***, 190 So. 2d 869 (Miss. 1966), as authority for reversing the verdict. However, ***Mister*** is easily distinguished.

¶7. In ***Mister***, this Court held that the verdict was against the overwhelming weight of the evidence where the State's case was based solely on the testimony of a witness who was not an accomplice but was in a related situation *and* his "testimony contained material inconsistencies, was unreasonable in major respects, and, by his own admission, was impeached to some extent." ***Mister***, 190 So. 2d at 871.

¶8. Long does not even assert that the testimony of either Rogers or Barnes contained material inconsistencies, that it was unreasonable in major respects, or that it was impeached. Further, Long has failed to establish that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Both Long and the State presented evidence. The jury weighed the evidence and determined that the State proved beyond a reasonable doubt that Long was guilty. Therefore, this issue is without merit.

**II. Whether the trial court erred in admitting evidence of prior bad acts.**

4

¶9.    Long asserts that the trial court erred in allowing the district attorney to put on testimony of Rogers that he had witnessed fifteen to twenty cocaine sales by Long.  Long cites *Burrell v. State*, 727 So. 2d 761 (Miss. Ct. App. 1998), as authority.  However, as discussed below, *Burrell* does not support Long's assertion.  In *Burrell*, the trial court found that a confidential informant's testimony that he had purchased drugs from Burrell on previous occasions was admissible to show identity, "*not for the purpose of 'identifying [the appellant] just as Freddie Burrell,'* but for '*identifying him as Freddie Burrell who sells drugs.*'" *Id.* at 767 (emphasis original).  The Court of Appeals found that the testimony was impermissible prior-bad-acts testimony, noting that there was no need to establish intent, as the distribution of illegal drugs had  indeed taken place.  The Court of Appeals further found that the trial court had erred in failing to give a limiting instruction, stating:

> "Even when other-crimes evidence is admissible under M.R.E. 404(b), it must pass through the 'ultimate filter' of M.R.E. 403." . . .  When Rule 404(b) evidence is admitted and an objection to the admission is overruled, that objection is to be considered an invocation to the right of a Rule 403 balancing analysis by the court. . . .

*Burrell*, 727 So. 2d at 768-69.

¶10.    Rule 403 of the Mississippi Rules of Evidence allows for the exclusion of certain relevant evidence and states that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Miss. R. Evid. 403.  However, such evidence may be admissible pursuant to Rule 404, which provides, in relevant part:

5

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Miss. R. Evid. 404(b).

¶11. In the instant case, the trial court considered Rogers' testimony regarding Long's prior bad acts pursuant to the Rule 403 balancing test outside the presence of the jury and found that the evidence was admissible. Specifically, the trial court found:

Okay. Well, of course, this matter, according to the Defendant's wishes, has not been severed where possession with intent and sale are both counts that are against him in this particular case. The State can't prove the entire case with one witness. The case law is clear that this testimony is admissible where one of the charges is that he was possessing drugs with the intent, with the intent to sell them. But it is limited by the fact that it must pass the 403 test, and then there must be a limiting instruction to the jury.

The court finds that the probative value in this case outweighs the prejudicial effect, and the court is going to allow it. But it will grant a limiting instruction that limits the consideration of this to the count that it is a possession count. Now should this not be all tied together at the end, you can, you may have another motion.

That limiting instruction was given, as Instruction 11 included the following language: "You are not, however, under any circumstances, to consider any evidence of alleged prior cocaine sales in reaching a verdict as to the charge of Sale of Cocaine as charged in Count I of the indictment, or for any other purpose not specifically authorized by this instruction."

¶12. Long has failed to establish that the trial court erred in admitting Rogers' testimony. Accordingly, we find that this issue is without merit.

**III. Whether black potential jurors were systematically and unconstitutionally struck from the jury.**

¶13. Long's entire argument on this issue is as follows:

6

The transcript of the jury selection indicates that the jury was selected from an initial panel of 32 persons, 20 of whom were white, and 12 of whom were black. The prosecutor used his peremptory challenges to strike six jurors, four of whom were black, to which defense counsel objected. . . . The prosecution's behavior strongly suggests an unconstitutional systematic exclusion of African-Americans from the jury below, which would have had a discriminatory effect on Mr. Long, an African-American, in violation of [*Batson*], and in violation of applicable federal and state constitutional provisions. For that reason, if for no other, this case should be reversed and remanded.

¶14. Under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), a defendant must establish a prima facie case of purposeful discrimination as follows:

To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96 (citations omitted). However, as this Court has acknowledged, this test was somewhat modified by the U.S. Supreme Court in *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

In that case the Supreme Court held that Powers, a white, had standing to challenge the exclusion of black jurors on the grounds that the equal protection right of the juror to serve was protected by *Batson*. *Powers*, 499 U.S. at 406, 111 S. Ct. 1364. Essentially, this means that step three above becomes the pivotal inquiry to determine a prima facie case, as this Court recognized in *Davis v. State*, 660 So. 2d 1228, 1240 (Miss. 1995), cert. denied, 517 U.S. 1192, 116 S. Ct. 1684, 134 L. Ed. 2d 785 (1996). Specifically, the pivotal question is whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94, 106 S. Ct. 1712.

7

*Randall v. State*, 716 So. 2d at 587 (Miss. 1998). Pursuant to the third step, "this Court has examined the number of strikes on a particular class, the ultimate ethnic or gender makeup of the jury, the nature of questions asked during the voir dire, and the overall demeanor of the attorney." *Id*. (citing *Coleman v. State*, 697 So. 2d 777, 786 (Miss. 1997); *Davis*, 660 So. 2d at 1263 (Banks, J., concurring); *Mack v. State*, 650 So. 2d 1289, 1299 (Miss. 1994), *cert. denied*, 516 U.S. 880, 116 S. Ct. 214, 133 L. Ed. 2d 146 (1995)). "Additionally, '[t]he [opponent of the strike] may also rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.'" *Id*. (citing *Batson*, 476 U.S. at 80, 106 S. Ct. at 1714)).

¶15. Once the defendant has established a prima facie case of discrimination, the burden shifts to the State to provide a race-neutral reason for each strike. *Batson*, 476 U.S. at 97. The trial court then makes a determination of whether the defendant has established purposeful discrimination. *Id.* at 98. This Court has held that, in reviewing a *Batson* claim, we will not overrule a circuit court unless the record indicates the decision was clearly erroneous or contrary to the overwhelming weight of the evidence. *Flowers v. State*, 947 So. 2d 910, 917 (Miss. 2007). *See also Thorson v. State*, 721 So. 2d 590, 593 (Miss. 1998).

¶16. In the instant case, the trial court found that Long, who is African-American, did not establish a prima facie case for racial discrimination and overruled the *Batson* challenge without requiring the State to provide race-neutral reasons for the strikes.

¶17. The record indicates that from the initial thirty-two jurors, the trial court struck five African-American jurors for cause, jurors 8, 12, 21, 24, and 29. The trial court also struck juror 35, a white male. Juror 1 was excused. In the first round of jury selection, the State

8

used peremptory challenges on jurors 13 (white female), 16 (white female), 17 (black female) and 18 (black male). The State tendered jurors 2 (white male), 3 (white male), 4 (white male), 5 (black female), 6 (white male), 7 (white male), 9 (white female), 10 (white female), 11 (white male), 14 (white female), 15 (black female), and 19 (white female). Long used all six of his peremptory challenges in the first round on jurors 2 (white male), 3 (white male), 4 (white male), 6 (white male), 7 (white male), and 9 (white female).

¶18. In the second round, the State challenged jurors 23 (black female), and 28 (black female). The State accepted 20 (white female), 22 (black female), 25 (white male), 26 (white female), 27 (white male), and 30 (white female). With regard to the alternate, Long challenged juror 31 (white male), and juror 32 (white female) was tendered.

¶19. In summary, the final jury consisted of jurors 5 (black female), 10 (white female), 11 (white male), 14 (white female), 15 (black female), 19 (white female), 20 (white female), 22 (black female), 25 (white male), 26 (white female), 27 (white male), and 30 (white female).

¶20. The transcript of the jury selection indicates that the following exchange then occurred:

> BY [Long's Counsel]: Okay. Your Honor, I am quite certain that Mr. Long is unfamiliar with the case of **Batson v. Kentucky**, and I am just noticing here that the challenges by the State, S-1 is a white female. S-2 is a white female. S-3 is a black female. S-4 is a black male. S-5 is a black female and S-6 is a black female. So we have I guess 75 percent – well I better refrain from doing that. I think we have four out of six that are African-American, and so therefore, I think it would be incumbent for Mr. Long to invoke his rights under **Batson** and inquire if there are race neutral reasons for these challenges.
> BY THE COURT: Let me see your list.
> [Note: The Court Reporter furnished her jury list to the Court, and there was a long pause while the Court reviewed the race designations of the jurors. The jury list is included in the Circuit Clerk's record on this appeal.]

BY THE COURT: Let the record reflect that on the panel there are – out of the first 32, which would include going through the alternate selection, there are 20 white people and 12 black people on the panel. On the jury that was tendered that we have just selected, there are nine whites and three blacks. The State exercised all of its peremptory challenges, two of which were on white females, four of which were on black. One, I believe, was a male and the other three were black females. The Court finds that that does not make a prima facie case for racial discrimination in this case. Therefore, the *Batson* challenge is overruled.

¶21. Although the State was not required by the trial court to provide a race-neutral reason for each strike, this Court may consider the record as a whole in determining whether the trial court's decision was clearly erroneous or contrary to the overwhelming weight of the evidence. As stated previously herein, the standard established by this Court requires such an analysis. *See Flowers v. State*, 947 So. 2d at 917; *Thorson v. State*, 721 So. 2d at 593.

¶22. The State accepted two African-American jurors and challenged two white and two African-American jurors, Jessie Burt and Kevin Ellis, in the first round. Long used all six of his peremptory challenges against white jurors in the first round. The State then accepted one African-American juror and struck two African-American jurors in the second round. The record establishes that, during voir dire, Jessie Burt said that her son recently had been convicted of a drug offense and sent to prison. However, Burt also indicated that her son's conviction and incarceration would not affect her performing her duty in Long's case. Also during voir dire, Kevin Ellis said that he was a teacher's assistant at the alternative school and had worked with Long when he was as a student there. Ellis also said that he knew some of Long's family, was a close friend of Long's aunt and could not be fair and impartial. Ellis later indicated that he could be fair. The responses of Burt and Ellis during voir dire would be sufficient race-neutral reasons for the State to strike them from the venire. Therefore,

10

these two strikes should not be considered as evidence of any intent by the prosecutor to discriminate. The record does not specifically indicate any race-neutral reasons the State may have had for striking the two African-American jurors in the second round.

¶23. Pursuant to the ***Batson*** standard stated above, Long established that: (1) he is a member of cognizable racial group; and (2) that the prosecutor has exercised peremptory challenges to remove from the venire members of Long's race. However, Long has failed to establish that the "facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." ***Batson***, 476 U.S. at 96. Neither Long nor the record establishes that the prosecutor engaged in a pattern of strikes on the basis of race or gender. Moreover, neither Long nor the record establishes that the decision of the trial court was "clearly erroneous or contrary to the overwhelming weight of the evidence." ***Flowers***, 947 So. 2d at 917. For these reasons, we find that this issue is without merit.

**IV. Whether the sentence violated Long's constitutional rights.**

¶24. Long asserts that two consecutive life sentences for possession and sale of cocaine as a habitual offender are disproportionate to the offenses and constitute cruel and unusual punishment.

¶25. Long was sentenced as a habitual offender to two life terms pursuant to Mississippi Code Section 99-19-83, which states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or

11

elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83 (Rev. 2007). Long previously had two drug convictions and a conviction for attempted aggravated assault.

¶26.    In *White v. State*, 742 So. 2d 1126 (Miss. 1999), this Court said:

> As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal. *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992). However, a sentence that is "grossly disproportionate" to the crime committed is subject to attack on Eighth Amendment grounds. *Id*.
> The elements for evaluating proportionality are:
> (1) The gravity of the offense and the harshness of the penalty;
> (2) Comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; and
> (3) Comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case.

*Id*. at 1135 (citing *Solem v. Helm*, 463 U.S. 277, 292, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) (a criminal sentence must not be disproportionate to the crime for which the defendant is being sentenced)). *White* further states:

> When a "threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality'" the proportionality analysis of *Solem* is used. *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996) (quoting *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996)). One seeking to prove a sentence violative of the Eighth Amendment carries a heavy burden. See *Stromas*, 618 So. 2d at 123. Although White's sentence is severe, the *Solem* proportionality analysis is not implicated in this case. *See id*.

*White*, 742 So. 2d at 1136. *See also Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (". . . *Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee.")

12

¶27. Long relies heavily on *White* for the proposition that the trial court failed to exercise the discretion allowed by the Legislature. Specifically, Long asserts that the trial court exercised no discretion because there is no indication in the record that it seriously considered the alternative of concurrent sentences rather than consecutive sentences. However, Long does not offer any authority to support this proposition. Also, *White* involved a sentence enhancement for sale of cocaine within 1,500 feet of a church pursuant to Mississippi Code Section 41-29-142, which is not the enhancement in the instant case. *See* Miss. Code Ann. § 41-29-142 (Rev. 2009). Further, *White* specifically distinguished habitual-offender status under Sections 99-19-83 and 99-19-81[1] from a case such as White's, where the trial court properly could exercise discretion.

> Only when a defendant has been convicted of a felony or federal crime twice previously and sentenced to two separate terms of one year or more has the Legislature removed any element of judicial discretion and mandated the defendant be sentenced to the maximum term of imprisonment allowed. Miss. Code Ann. §§ 99-19-81 to -83 (1994).

*White*, 742 So. 2d at 1137. However, this Court also has said:

> The fact that the trial judge lacks sentencing discretion does not necessarily mean the prescribed sentence meets federal constitutional proportionality requirements. Notwithstanding § 99-19-81, the trial court has authority to review a particular sentence in light of constitutional principles of proportionality as expressed in *Solem v. Helm*. That authority is a function of the Supremacy Clause. U.S. Const. Art. VI, cl. 2; *Bolton v. City of Greenville*, 253 Miss. 656, 666, 178 So. 2d 667, 672 (1965). . . .
>
> Our approval of the sentence in this case should not be taken to intimate that reduced sentences for habitual offenders might become the rule. *Solem v. Helm* does not represent a *de facto* grant of sentencing discretion, but, rather, ties proportionality to the three-step analysis outlined therein.

---

[1]Section 99-19-81 provides that a habitual offender twice convicted of a felony shall be sentenced to the maximum term for such felony. Miss. Code Ann. § 99-19-81 (Rev. 2007).

***Clowers v. State***, 522 So. 2d 762, 765 (Miss. 1988) (this Court affirmed the trial court's reduction of maximum sentence for forgery on the basis that it was disproportionate and cruel and unusual punishment).

¶28.   In the instant case, Long argues that there is no indication that the trial court evaluated the proportionality of the sentence to sentences imposed for similar offenses in the trial court's jurisdiction and in other jurisdictions.   However, Long fails to establish that a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality.   ***White***, 742 So. 2d at 1136.   Notwithstanding Long's failure to make this initial showing to warrant a ***Solem*** analysis, Long fails to address all three of the required factors set out above.   Long alludes to the first ***Solem*** factor, but completely fails to address factors two and three.   Therefore, Long's claim is procedurally barred.   *See **Willis v. State***, 911 So. 2d 947, 951 (Miss. 2005).   Even if Long's claim was not procedurally barred, this Court previously has found that a defendant convicted of possession of a controlled substance may be sentenced to life without the possibility of parole as a habitual offender.   *See **Wall v. State***, 718 So. 2d 1107, 1114-15 (Miss. 1998); *see also **Oby v. State***, 827 So. 2d 731, 734-35 (Miss. Ct. App. 2002).

¶29.   Long also cites ***Ashley v. State***, 538 So. 2d 1181 (Miss. 1989), for the proposition that the trial court was required to engage in a proportionality analysis under the Eighth Amendment.   However, for the reasons stated previously herein, Long is mistaken.

¶30.   In ***Ashley***, Clyde Ashley was convicted of burglary as the result of the shoplifting and in-store consumption of two cans of sardines and breaking into a house to steal the money to pay for the sardines.   Ashley, who had prior convictions for burglary and attempted

14

robbery, was sentenced to life imprisonment as a habitual offender. In analyzing Ashley's sentence, this Court noted that even the district attorney acknowledged the undue harshness of a life sentence for "Ashley's great sardine caper." *Id*. at 1185. This Court vacated Ashley's life sentence and remanded for an additional sentencing hearing consistent with *Solem*, 463 U.S. 277. *Ashley*, 538 So. 2d at 1185.

¶31. In the instant case, Long fails to make a clear argument. In addition to the previously mentioned arguments, Long appears to be making a proportionality argument based on his receiving consecutive rather than concurrent life sentences. However, Long fails to explain how a consecutive sentence is disproportionate, considering that Section 99-19-83 mandates life without parole. Long then asserts that the trial court had a duty under *Ashley* to determine whether Long's prior conviction for attempted aggravated assault involved actual violence prior to sentencing him under Section 99-19-83. However, in *Ashley*, this Court found that attempted armed robbery is a crime of violence. *Id*. at 1185.

¶32. Long also cites *McQueen v. State*, 473 So. 2d 971, 973 (Miss. 1985), for the proposition that there may be cases where it is not clear whether a conviction was for a crime of violence. In *McQueen*, this Court relied on authority from other jurisdictions, which found that "violence" and "force" are synonymous. *Id*. at 972-73. This Court held that the phrase "crime of violence" was not unconstitutionally vague, but acknowledged that there may be cases in which the application of the statute would not be clear. *McQueen*, 473 So. 2d at 973. However, this Court further affirmed the trial court, finding that attempted rape was a crime of violence.

¶33. Clearly, attempted aggravated assault is a crime of violence. Assault is defined in Black's Law Dictionary as: "Any willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability so to do [sic], and any intentional display of **force** such as would give the victim reason to fear or expect immediate bodily harm, constitutes an assault." *Black's Law Dictionary* 114 (6th ed. 1990).

¶34. Long's sentence was in the statutory range, it was mandatory, and he has failed to establish that his sentence is grossly disproportionate to his crime. Therefore, the trial court did not err in sentencing Long to two consecutive terms of life imprisonment.

## CONCLUSION

¶35. For the reasons stated herein, we affirm the judgment of conviction of one count of possession of cocaine with the intent to sell and one count of sale of cocaine in the Circuit Court of Grenada County and the sentences, as a habitual offender, to life imprisonment on each count to be served consecutively in the custody of the Mississippi Department of Corrections.

¶36. **COUNT I: CONVICTION OF SALE OF COCAINE AND SENTENCE, AS A HABITUAL OFFENDER, OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO SELL AND SENTENCE, AS A HABITUAL OFFENDER, OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II TO BE SERVED CONSECUTIVELY TO THE SENTENCE IN COUNT I.**

**WALLER, C.J., LAMAR, KITCHENS AND PIERCE, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT WITH SEPARATE OPINION JOINED BY CARLSON, P.J., DICKINSON AND CHANDLER, JJ.**

**RANDOLPH, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶37. I concur with the Majority's analysis of Issues I, II, and IV. I write separately only to address the Majority's analysis of Issue III, the ***Batson*** issue. *See **Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). While I agree with the Majority's conclusion that Long's argument is without merit, I find the attending analysis to go unnecessarily beyond Long's lack of a prima facie showing of purposeful discrimination.

¶38. Long had the burden of showing that the "facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." ***Batson***, 476 U.S. at 96. Long's prima facie presentation was simply that the State had exercised four of its six peremptory challenges on African-American jurors. The circuit court concluded that this showing was insufficient for purposes of establishing a prima facie case of racial discrimination. Stated otherwise, Long failed to satisfy his burden of providing enough evidence to permit the circuit court to infer the fact at issue, i.e., purposeful discrimination. The Majority ostensibly agrees, and finds that this prima facie case ruling was not clearly erroneous or contrary to the overwhelming weight of the evidence, stating:

> Long has failed to establish that the "facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." ***Batson***, 476 U.S. at 96. Neither Long nor the record establishes that the prosecutor engaged in a pattern of strikes on the basis of race or gender.

(Maj. Op. at ¶ 23). Thus, no further inquiry or analysis is required.

¶39. Notwithstanding that conclusion, the Majority unnecessarily delves into a race-neutral-reason discussion in paragraph 21. As Long never established a prima facie case, no burden was placed upon (or shifted to) the State to provide a race-neutral reason. *See*

17

*Flowers v. State*, 947 So. 2d 910, 917 (Miss. 2007) (quoting *McFarland v. State*, 707 So. 2d 166, 171 (Miss. 1997)) ("the party who objects to the peremptory strike '*must first* make a prima facie showing that race was the criteria for the exercise of the peremptory strike'") (emphasis added); *Thorson v. State*, 721 So. 2d 590, 593 (Miss. 1998) ("[a] *Batson* challenge . . . should proceed as follows: First, the defendant *must* establish a prima facie case of discrimination . . . .") (emphasis added); *Batson*, 476 U.S. at 97. The Majority recognizes such analysis is superfluous, stating "[a]lthough the State was not required by the trial court to provide a race-neutral reason for each strike, this Court may consider the record as a whole in determining whether the trial court's decision [on whether Long had established a prima facie case of purposeful discrimination] was clearly erroneous or contrary to the overwhelming weight of the evidence." (Maj. Op. at ¶ 21). Indeed we "may," but for what purpose?

¶40.     Under *Batson*, the State was not required to address race-neutral reasons and, therefore, this Court should decline to offer race-neutral reasons not within the record before this Court. Accordingly, I concur in part and in result.

   **CARLSON, P.J., DICKINSON AND CHANDLER, JJ., JOIN THIS OPINION.**