40 So.3d 646 (2010)
Tadarryl REW, Appellant
v.
STATE of Mississippi, Appellee.
No. 2009-KA-00646-COA.
Court of Appeals of Mississippi.
July 20, 2010.
Leslie S. Lee, Jackson, Hunter Nolan Aikens, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Jackson, attorney for appellee.
EN BANC.
ISHEE, J., for the Court:
¶ 1. Tadarryl Rew was convicted of burglary of a dwelling, two counts of kidnaping, and being a felon in possession of a firearm. The Circuit Court of Lauderdale County sentenced him as a habitual offender to the custody of the Mississippi Department of Corrections (MDOC). After the denial of Rew's post-trial motions, he timely appeals and asserts the following assignments of error:
I. The circuit court committed plain error in granting jury instruction S-1, as amended, which constructively amended the indictment and rendered it fatally defective, and

*647 II. Defense counsel was ineffective in requesting the amendment to jury instruction S-1 that constructively amended the indictment and lessened the State's burden of proof and broadened the grounds on which the jury could convict Rew.
Finding no error, we affirm.

FACTS
¶ 2. In the early morning hours of May 21, 2008, Jermaine Lewis (Jermaine), Darryl Franklin, and Vanecia Middlebrook were spending the night at Latasha Lewis's (Latasha) apartment at Village Apartments while Latasha stayed at her mother's home. Jermaine, who is Latasha's cousin, and Middlebrook were asleep in Latasha's bedroom when they were awaken by the sound of glass breaking. Jermaine got up and checked the hallway. Finding nothing, he returned to the bedroom.
¶ 3. When Jermaine returned to the bedroom, he saw Rew coming through the bedroom window. According to Jermaine, when Rew saw him in the room, he asked: "What are you doing in my ____ f _____ house?" According to Jermaine's testimony, Rew then pointed a gun at him and told him to "get back." Rew then told Middlebrook to get out of the bed and he ordered both Middlebrook and Jermaine into the bedroom closet. Rew tried to call Latasha from his cellular phone, but she did not answer. He then grabbed Jermaine's cellular phone and told Jermaine to call Latasha.
¶ 4. According to both Latasha and Jermaine, once Rew was able to reach Latasha on the phone, Rew told Latasha: "You must not love your cousin. I got a gun to his head[,] and I'll kill him." Latasha testified that she then heard the sound of one gunshot through the phone. She then woke up her sister, and they called the police. Latasha remained on the phone with Rew until the police arrived at her apartment.
¶ 5. Officer Sabanneo Terrell, a Meridian Police Department officer, was called to the Village Apartments in response to a disturbance involving a gun. Officer Terrell testified that when he arrived at Latasha's apartment, he noticed a broken window to the left of the apartment door. Once backup for Officer Terrell arrived, he knocked on the door, but he did not get a response. He then walked to the back of the apartment where he noticed a bent-up window screen lying next to an open bedroom window that had one broken glass pane. Officer Terrell peered through the window and saw a man walking from the front of the apartment. That man was later identified as Rew. Officer Terrell then walked back around to the front of the apartment to meet the other police officers. The front door opened, and Jermaine walked out with his hands up, and repeatedly told the officers, "I'm not the one you're looking for."
¶ 6. Officer Terrell and Officer John Griffith, another Meridian Police Department officer, entered the apartment. Rew then walked out of the bathroom. He was arrested and taken to the police station.
¶ 7. A grand jury indicted Rew, and he was tried by a jury on the charges of burglary of a dwelling, two counts of kidnaping, and being a felon in possession of a firearm, all in connection with the May 21, 2008, incident. The jury found Rew guilty on all charges. The circuit court sentenced Rew as a habitual offender to the custody of the MDOC as follows: (1) ten years for Count I, burglary of a dwelling; (2) ten years for Count II, kidnaping; (3) ten years for Count III, kidnaping; and (4) one year for Count IV, felon in possession of a firearm with the sentence for Count III to run concurrently with the sentence *648 for Count II and consecutively with the sentences for all other counts.

DISCUSSION

I. Jury Instruction S-1
¶ 8. Rew asserts that the circuit court erred in granting jury instruction S-1. According to Rew, jury instruction S-1 constructively amended his indictment and rendered the indictment fatally defective. Rew's indictment charged him with the intent to commit the crime of kidnaping. However, the jury was instructed that Rew could be convicted of burglary if he intended to break and enter into Latasha's dwelling with the intent to commit a crime therein. Jury instruction S-1, as amended, reads:
The Court instructs the [j]ury that, should you find from the evidence in this case, beyond a reasonable doubt that:
1. On or about the 21st day of May, 2008, in Lauderdale County, Mississippi;
2. The Defendant, Tadarryl Rew, did willfully, unlawfully and feloniously break and enter the dwelling house of Latasha Lewis, with the intent to commit a crime therein,[1] then it is your sworn duty to find Tadarryl Rew guilty of Burglary of a Dwelling under Count I.
Should the State fail to prove any or more of these essential elements beyond a reasonable doubt, then you shall find Tadarryl Rew not guilty under Count I.
¶ 9. It is undisputed that the circuit court amended jury instruction S-1 per the request of Rew. According to the record, the circuit court specifically asked Rew if he was waiving any inconsistency that jury instruction S-1 would present as it related to the language of the indictment. Rew waived any objection.
¶ 10. "The decision to redact a portion of the jury instruction or tender it in its entirety falls within the realm of trial strategy. However, assuming error only for the sake of argument, [the defendant] does not make a showing that he was actually prejudiced." Wilcher v. State, 863 So.2d 719, 751 (¶ 115) (Miss.2003). This Court looks at the jury instructions as a whole. Id. (citing Caston v. State, 823 So.2d 473, 506 (¶ 114) (Miss.2002)). "Jury instructions will always be considered as a whole as opposed to the singling out of any instructions." Goodin v. State, 787 So.2d 639, 655 (¶ 54) (Miss.2001). We find that jury instruction S-1 adequately instructed the jury; thus, this issue is without merit.

II. Ineffective Assistance of Counsel
¶ 11. Rew argues that his trial counsel was ineffective in requesting the amendment to jury instruction S-1. Rew claims that this change constructively amended his indictment and lessened the State's burden of proof and broadened the grounds on which the jury could convict him.
¶ 12. Claims of ineffective assistance of counsel are reviewed by using the two-pronged test outlined in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, Rew has the burden of proof to show by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) that the deficiency did, in fact, prejudice him. Moreno v. State, 967 So.2d 701, 703 (¶ 4) (Miss.Ct.App.2007). In determining whether the first prong of *649 Strickland concerning counsel's performance has been satisfied, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. The second prong of the Strickland test requires that Rew prove prejudice by showing that there was a reasonable probability that, but for counsel's errors, the trial court's result would have been different. Id. at 694, 104 S.Ct. 2052. Whether the prongs of this test are met is determined by an examination of the totality of the circumstances. Id. at 695, 104 S.Ct. 2052.
¶ 13. Our review of the trial transcript reveals that Rew was specifically asked, on the record, if he was waiving any inconsistency that jury instruction S-1 would present as it related to the language of the indictment. Rew then waived any objection. Rew requested the change to the jury instruction; thus, we find that this argument has no merit. Rew's assertion that he received ineffective assistance of counsel fails.
¶ 14. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING, AND SENTENCE OF TEN YEARS; COUNT II, KIDNAPING, AND SENTENCE OF TEN YEARS; COUNT III, KIDNAPING, AND SENTENCE OF TEN YEARS; AND COUNT IV, FELON IN POSSESSION OF A FIREARM, AND SENTENCE OF ONE YEAR, ALL AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE FOR COUNT III, KIDNAPING, TO RUN CONCURRENTLY WITH THE SENTENCE FOR COUNT II, KIDNAPING, AND CONSECUTIVELY TO ALL OTHER SENTENCES, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
KING, C.J., LEE and MYERS, P.JJ. IRVING, GRIFFIS, BARNES, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND MAXWELL, JJ.
ROBERTS, J., Specially Concurring:
¶ 15. While I agree with the majority's analysis and resolution of the substantive issues raised on appeal by Tadarryl Rew, I again, as I did in Lamar v. State, 983 So.2d 364 (Miss.Ct.App.2008) and Perkins v. State, 37 So.3d 656 (Miss.Ct.App.2009), write separately to express concern over another example of the failure of a trial court to adhere to the Legislature's mandate in regard to the sentencing of habitual offenders. The State chose not to file a cross-appeal under Mississippi Code Annotated section 99-35-103(c) (Rev.2007) and attack the sentence imposed as illegal. As such, this Court is without authority to remand the case for re-sentencing. Nevertheless, when the judiciary of this state fails to follow the mandatory sentencing laws, I feel it is my duty to comment.
¶ 16. Rew was indicted and found guilty of the following crimes: burglary of a dwelling in violation of Mississippi Code Annotated section 97-17-23 (Rev.2007); two counts of kidnaping in violation of Mississippi Code Annotated section 97-3-53 (Rev.2007); and felon in possession of a firearm in violation of Mississippi Code Annotated section 97-37-5 (Supp.2009). Additionally, he was indicted on the above charges as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev.2007). However, during Rew's sentencing hearing the State moved the trial court to amend his indictment to proceed under Mississippi Code Annotated section *650 99-19-81 (Rev.2007). The State's request was granted without a substantive objection from Rew's counsel.
¶ 17. Section 99-19-81 states that:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
(Emphasis added). During Rew's sentencing hearing, the State admitted evidence of his previous felony convictions and their respective sentences, which satisfied the requirements of section 99-19-81. Rew was convicted of third-degree arson on December 2, 2002, and sentenced to a term of three years. On October 10, 2006, Rew was again convicted of the felony of statutory rape and sentenced to ten years but released on post-release supervision with credit for 199 days already served. Therefore, the State proved beyond a reasonable doubt that Rew was a habitual offender under section 99-19-81, and the trial court was obligated to sentence Rew to the maximum term of imprisonment statutorily allowed for each charge of which he was found guilty. The record shows the trial court was fully aware of this fact.
¶ 18. A conviction for burglary of a dwelling house under section 97-17-23 carries with it a maximum sentence of twenty-five years. The maximum term of imprisonment for kidnaping under section 97-3-53 is, in Rew's case, thirty years. Finally, the maximum term of imprisonment for a felon in possession of a weapon under section 97-37-5 is ten years. Therefore, given the verdicts of the jury, the trial court had no statutory discretion to lessen Rew's sentences to less than the maximum term. Of course, the trial court still retained the discretion, if it saw fit, to order Rew's four sentences to run concurrently rather than consecutively. Miss.Code Ann. § 99-19-21(1) (Rev.2007).
¶ 19. The one exception to the mandate of section 99-19-81 is if the trial court finds that the sentences required by section 99-19-81 are so grossly disproportionate to the offenses that following the law violates the constitution's prohibition against cruel and unusual punishment. White v. State, 742 So.2d 1126, 1135 (¶ 35) (Miss.1999). Rew's counsel attempted to argue this point, albeit inaccurately, and cited Ashley v. State, 538 So.2d 1181 (Miss. 1989) for the proposition, as he phrased it, that "[Ashley] says judges aren't robots... [.] Judges have this discretion to sentence somebody under the habitual statute." However, this statement is simply not true as the habitual-offender statutes remove all sentencing discretion from a trial court's purview. It is only through an analysis of the constitutional ramifications of the sentence required by section 99-19-81 that a trial court may regain the sentencing discretion it normally enjoys. The record is simply void of any evidence presented by Rew that following mandate of section 99-19-81 in his case constituted cruel and unusual punishment.
¶ 20. In Ashley, the supreme court stated:
In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court held that a recidivism sentence of life imprisonment without parole was subject to scrutiny under the cruel and unusual punishment clause of the Eighth Amendment to the Constitution *651 of the United States. When faced with such an issue, trial courts are charged to engage in proportionality analysis under the Eighth Amendment
guided by objective criteria, including (i) harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentence imposed for commission of the same crime in other jurisdictions.
463 U.S. at 292, 103 S.Ct. at 3011, 77 L.Ed.2d at 650. See also Jenkins v. State, 483 So.2d 1330 (Miss.1986); and Presley v. State, 474 So.2d 612 (Miss. 1985).
Ashley, 538 So.2d at 1185. Furthermore, "[w]hen a `threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality"' the proportionality analysis of Solem is used." White, 742 So.2d at 1135 (¶ 37) (citing Hoops v. State, 681 So.2d 521, 538 (Miss.1996)); (see also Long v. State, 33 So.3d 1122 (¶ 26) (Miss.2010)) (quoting Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)) ("... Solem was simply wrong; the Eighth Amendment contains no proportionality guarantee."). This analysis was not undertaken by the trial court. Nevertheless, as is evident from Rew's sentences, the trial court gave credence to Rew's counsel's argument and impermissibly deviated from the singular directive of section 99-19-81.
¶ 21. As I stated in Lamar, 983 So.2d at 372-73 (¶¶ 31-32) (Roberts, J., specially concurring):
Our system of checks and balances dictates that the legislative branch of the government writes the laws. The Mississippi Legislature has clearly removed discretion from sentencing as to the duration of sentences in the context of habitual offenders. As a matter of public policy, the Legislature has determined that certain repeat felony offenders represent serious threats to the public safety. The Legislature requires that habitual offenders be given the maximum authorized sentence; and they may not receive a suspended sentence, probation, parole, earned-time credit, nor any form of early release. We, as members of the judicial branch of the government, interpret and follow the laws. We do not, and cannot, rewrite them to our liking. Circuit court judges of this state are bound by their oaths to impose lawful sentences upon convicted felons. Pursuant to Article 6, Section 155 of the Mississippi Constitution, before taking office all judges must swear or affirm, among other things, to "discharge and perform all duties incumbent upon him or her ... agreeably to the Constitution of the United States and the Constitution and laws of the State of Mississippi."
In this case, there was neither a colorable claim made by Rew that the sentence required by section 99-19-81 was disproportionate to his crimescrimes of violence, breaking and entering an occupied dwelling at night while armed and discharging his pistol while inside, kidnaping, and general disregard for his fellow mannor was there any indication that the trial court considered the constitutional principles of proportionality expressed in Solem and its progeny. In fact, the trial court commented on the heinous nature of Rew's crimes as stating:
And that there was not a request from the State for him to serve the rest of his life in jail, although it could have been requested and submitted to the jury.
....
Considering all these factors, certainly, the breaking into a residence at night at gunpoint, holding people hostage, and having a gun when you've got two prior *652 felony convictions, those are very serious offenses. They are very dangerous. And the truth is, Mr. Rew is very lucky that he didn't kill somebody there when he did that because he would be looking at a capital murder, possibly the death penalty.
That didn't happen. But short of that, it is about as serious of a case that you could have here and that we have to deal with, the home invasion type thing.
Without a determination that following the mandate of section 99-19-81 violated Rew's constitutional right to be free from cruel and unusual punishment, the trial court's sentences are unlawful.
GRIFFIS AND MAXWELL, JJ., JOIN THIS OPINION.
NOTES
[1] Before jury instruction S-1 was amended, this part read "with the intent to kidnap therein."